## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WILMINGTON DIVISION

In the Matter of:                                    **Chapter 11**
**OAK-BARK CORPORATION,**                    **Case No.: 23-03351-5-JNC**
        Debtor.

### AMENDED PLAN OF LIQUIDATION

Pursuant to the provisions of 11 U.S.C. § 1123, Oak-Bark Corporation ("Debtor") hereby submits the following Amended Plan of Liquidation ("Plan"):

### I.  INTRODUCTION

**A.      Background.**

On November 17, 2023 ("Petition Date"), Debtor filed a voluntary petition for relief pursuant to chapter 11 of the United States Bankruptcy Code.  Debtor is a North Carolina corporation located in Wilmington, North Carolina.  Debtor owns several parcels of real property, some of which it leases for commercial use.

Since the Petition Date, Debtor has complied with the requirements of the Bankruptcy Code, orders of the Court, and the requests of the Bankruptcy Administrator's office.  An intake conference with the Bankruptcy Administrator's office was held on December 21, 2023, and a Section 341 meeting of creditors was held on January 23, 2024.   On January 1, 2024, the court entered its Order Granting Motion to Obtain Post Petition Financing [Doc. No. 70].  Hexion Inc. ("Hexion") and Entegris, Inc. ("Entegris") requested several extensions of time to file complaints to determine dischargeability of debt pursuant to 11 U.S.C. § 523(a), and the court granted the same [Doc. Nos. 84, 91, 119, 120, and 138].  Debtor has requested to employ special counsel, Grady R. Richardson, Jr. to litigate a breach of Promissory Note against Entegris, and has also requested to employ an CPA [Doc. Nos. 44, 95], as of the of filing this Plan of Liquidation, the applications to employ are pending.

Debtor was incorporated on October 13, 2004 and subsequently purchased real property assets of Wright Chemical (the "Site").  In 2010 Environmental Protection Agency ("EPA") issued a CERCLA information request to Debtor. On or about August 11, 2023, the United States of America ("Plaintiff") filed a Complaint for, *inter alia*, Recovery of Costs in the Eastern District of North Carolina, Wilmington Division against Debtor *et al*, known by case no: 7:23-cv-01150-FL asserting alleged environmental violations and clean-up costs that will likely exceed $5 million, perhaps as much as $12 million (the "EPA Litigation").  On November 20, 2023, Debtor filed a Motion to Transfer Venue to the Bankruptcy Court, Eastern District of North Carolina.  On December 21, 2023, Debtor filed a Motion to Dismiss the above referenced Complaint [EPA Litigation, Doc. Nos. 58-59].  Separately, Cronly Bluffs, LLC ("Cronly") and the EPA Litigation remaining defendants also filed Motion(s) to Dismiss [EPA Litigation, Doc. Nos. 40 - 45] (Doc. Nos. 40-45 and 58-59, collectively referred to as the "Motions to Dismiss").  The Motion to Transfer Venue was subsequently denied, while the Motions to Dismiss were granted as to all parties except Debtor [EPA Litigation, Doc. No. 69].

On March 15, 2024, Debtor timely filed its Plan of Liquidation [Doc. No. 97].  The parties to the EPA Litigation, including but not limited to Debtor, Cronly, William E. Oakley, James C. Barker

1

and the EPA, along with Koch Sulfur Products, LLC ("Koch"), Hexion, and Entegris, have engaged in the mediation process in an attempt to resolve issues related to Debtor's bankruptcy, including its Plan of Liquidation, and EPA Litigation [See, e.g. Doc. No. 121]. Such efforts at a mediated resolution have proven unsuccessful. Debtor now submits to the Court this Amended Plan of Liquidation ("Plan").

Pre-petition, Debtor obtained a feasibility study from Shield Engineering in 2018 which evaluated the options to clean up the Site ("Shield Report"). The estimated cost according to the Shield Report was less than six million dollars. Koch, Hexion and Entegris have obtained a separate report which estimates a cost of nearly thirteen million dollars. Debtor does not agree with the cost estimate in the report commissioned by Koch, Hexion and Entegris, and believes it is much higher than necessary to clean up the Site.

**B.    Summary of the Plan.**

The Plan contemplates a liquidation of Debtor's assets through a Remediation Trust. In exchange for the terms provided in Article IX, the Remediation Trust will also use additional proceeds to fund litigation and remediation including (1) additional funds in the amount of $150,000.00 to be transferred by William E. Oakley and James C. Barker to the Remediation Trust, and (2) additional real property to be transferred by Cronly to the Remediation Trust

More specifically, in exchange for the Gatekeeping Injunction provided for in Article IX, the Protected Parties, which shall mean William E. Oakley, James C. Barker, and Cronly and their heirs, successors, and assigns as defined in Article II, agree to the following terms:

1. All of Debtor's tangible real and personal property shall be transferred to the Remediation Trust following the Effective Date of the confirmed Plan.
2. Any and all net proceeds (after costs and fees of litigation) received by Debtor following its litigation against Entegris shall be transferred into the Remediation Trust ("Litigation Proceeds)"
3. William E. Oakley and James C. Barker agree to conditionally fund part of the Remediation Trust with the aforementioned transfer of $150,000.00 ("Oakley/Barker Contribution") following the Effective Date of the confirmed Plan, for the purpose of settling any alter ego and/or avoidable transfer claims (all of which are denied by Messrs. Oakley and Barker), and in exchange for the protections included with the Plan, including without limitation the gatekeeping protections.
4. All of Cronly's real property shall be transferred to the Remediation Trust following the Effective Date of the confirmed Plan.
5. The assets to be transferred to the Remediation Trust by Debtor, William E. Oakley, James C. Barker and Cronly, in combination with the Litigation Proceeds, as described in Paragraphs 1-4 above, shall be known as the "Remediation Trust Transferred Assets".
6. Proceeds of the Remediation Trust may be used for remediation and/or indemnification/contribution (i.e. litigation expenses if the Enjoined Parties sue) up to a maximum amount of $3.2 million.
   a. After a payout of $3.2 million, all remaining assets shall be distributed to the owners of Debtor/Cronly.
7. The Remediation Trust shall spend the Oakley/Barker Contribution first.
8. The Remediation Trust shall spend the Litigation Proceeds second.
9. The Remediation Trust shall sell Cronly's real property and use those proceeds third.

10. The Remediation Trust shall only sell Debtor's Property once the remediation is complete.

11. If the Remediation Trust Transferred Proceeds is less than $3.2 million, owners of Debtor/Cronly shall fund the Remediation Trust up to $3.2 million dollars.

12. If the Remediation Trust Transferred Proceeds exceed $3.2 million, the balance shall be paid to the owners of Debtor and Cronly.

In accordance with the Plan, Debtor intends to satisfy certain creditor claims using the Remediation Trust's Transferred Assets.   Specifically, Debtor's real property includes the following parcels of land, also included on Exhibit A attached hereto (the "Real Property"):

1. NW corner of Fertilizer Rd and Neils Eddy Rd - PID: 89563 - 17.65 ac
2. NW corner of Fertilizer Rd and Neils Eddy Rd - PID: 28677 - 3.53 ac
3. 333 Neils Eddy Rd, Riegelwood, NC 28456 - PID: 89556 - 0.95 ac
4. 333 Neils Eddy Rd, Riegelwood, NC 28456 - PID: 29802 - 78.54 ac
5. 1493 Neils Eddy Rd, Riegelwood, NC 28456 - PID: 29803 - 3.39 ac

Further, Debtor's personal property includes a promissory note owed by Entegris in the amount of $1,676,788.00 as of the Petition Date, among other assets listed on Exhibit A attached hereto (the "Personal Property").

The Plan is based on Debtor's belief that the interests of its creditors will be best served if it is allowed to satisfy claims through the Remediation Trust's Transferred Assets. Debtor's liabilities will be paid according to the priorities of the Bankruptcy Code and the Orders of this Court. The specific amounts and terms of payment will be made according to the treatment for each respective creditor provided below. Debtor urges Creditors and parties in interest to consult with counsel. Parties in interest should not rely on any representations not contained in the Plan in making a determination on voting on the Plan.  A detailed discussion of the voting rights of creditors is contained in the Plan.

## II.  DEFINITIONS

1.       "ADMINISTRATIVE CLAIM" shall mean any Claim entitled to priority under § 507(a)(1) of the Bankruptcy Code.

2.       "ALLOWED CLAIM" shall mean (a) any Claim against Debtor, proof of which was timely filed or by order of the Bankruptcy Court was not required to be filed; or (b) any Claim that has been listed in the Schedules as liquidated in amount and not disputed or contingent; and in each such case in (a) or (b) above, as to which either (1) no objection to the allowance thereof or other similar pleading has been filed within the applicable period, or (2) an objection or other similar pleading has been filed and the Claim has been allowed by a Final Order of the Bankruptcy Court, but only to the extent so allowed.

3.       "AVAILABLE CASH" shall mean the total cash available for distribution on the "Effective Date" (as the term is defined below).

4.       "BANKRUPTCY CODE" shall mean the United States Bankruptcy Code, Title 11 of the United States Code, as enacted in 1978 and thereafter amended.  References to "§___" herein shall refer to a section of the Bankruptcy Code, 11 U.S.C. § 101, et seq.

5.       "BANKRUPTCY RULES" shall mean the Federal Rules of Bankruptcy Procedure, as

amended from time to time, as applicable to Chapter 11 cases.

6.      "CLAIM" shall mean a duly listed or a timely filed Allowed Claim which is allowed and ordered to be paid by the Court.

7.      "CLASS" shall mean any one of the Classes of Claims or Interests designated in Article III of the Plan.

8.      "CONFIRMATION DATE" shall mean the date of entry by the Court of an order confirming the Plan at or after a hearing pursuant to 11 U.S.C. § 1129.

9.      "CONFIRMATION HEARING" shall mean the hearing conducted by the Court regarding confirmation of the Plan pursuant to 11 U.S.C. § 1129.

10.      "CONFIRMATION ORDER" shall mean the order of the Court confirming the Plan.

11.      "COURT" shall mean the United States Bankruptcy Court for the Eastern District of North Carolina, including the United States Bankruptcy Judge presiding in the Chapter 11 case of Debtor.

12.      "CREDITORS" shall mean all creditors of Debtor holding claims for unsecured debts, liabilities, demand or claims of any character whatsoever.

13.      "DEBTOR" shall mean Oak-Bark Corporation.

14.      "DISBURSING AGENT" shall mean Debtor or the person selected by the Court who shall perform the duties and have the rights and obligations described herein.

15.      "DISCLOSURE STATEMENT" shall mean the Disclosure Statement describing this Plan prepared in accordance with §1125 and approved by order of the Bankruptcy Court, to be distributed to the holders of claims whose votes with respect to this Plan are to be solicited.

16.      "DISPUTED CLAIM" shall mean any claim (a) that is scheduled by Debtor as disputed, contingent or unliquidated, or (b) that is scheduled by Debtor, or proof of which has been filed with the Bankruptcy Court and with respect to which a timely objection to allowance, in whole or in part, has been filed and which objections have not been (i) withdrawn or settled, or (ii) determined by a Final Order.

17.      "DISTRIBUTION DATE" shall mean the date on which distributions are to be made under Debtor's Plan.

18.      "ENJOINED PARTIES" means (i) all Entities who have held, hold, or may hold Claims against or Equity Interests in the Debtor (whether or not proof of such Claims or Equity Interests has been filed and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan), (ii)  (ii) any Entity that has appeared and/or filed any motion, objection, or other pleading in this Chapter 11 Case regardless of the capacity in which such Entity appeared and any other party in interest, (iii) any Related Entity, and (iv) the predecessors, successors, assigns (whether by operation of law or otherwise), and each of their respective present, future, or former officers, directors,

4

employees, managers, managing members, members, financial advisors, attorneys, accountants, investment bankers, consultants, professionals, advisors, shareholders, principals, partners, subsidiaries, divisions, management companies, heirs, agents, and other representatives of each of the foregoing, including the United States of America and Environmental Protection Agency.

19.     "ESTATE" or "BANKRUPTCY ESTATE" shall mean all legal or equitable interests of Debtor in property, whether personally held or not, at the time of Debtor's bankruptcy filing.

20.     "EFFECTIVE DATE" shall be that date on which the Confirmation Order becomes final and non-appealable.22.   "FINAL DECREE" shall mean the order of this Court pursuant to FEDERAL RULE OF BANKRUPTCY PROCEDURE 3022 closing this case.

21.     "FINAL ORDER" shall mean an order of the Court that has been entered and either (a) the time for appeal from such entered order has expires; or (b) any appeal that has been timely filed has been dismissed or otherwise finally determined.

22.     "GENERAL UNSECURED CLAIM" shall mean any claim, whether or not liquidated or contingent, other than a priority claim, administrative claim, or secured claim.

23.     "IMPAIRED" classes of creditors are those whose claims or interests are altered by the Plan, or who will not receive under the Plan the allowed amount of their claims in cash as of the "Effective Date" (as defined above).

24.     "REMEDIATION TRUST" means the trust established on the Effective Date in accordance with the terms and conditions set forth in the Remediation Trust Agreement as presented to the Court at the Confirmation Hearing. As set forth in the Remediation Trust Agreement, the Remediation Trust shall hold the Remediation Trust Assets following the Effective Date of the confirmed Plan.

25.     "REMEDIATION TRUST AGREEMENT" means the agreement establishing and delineating the terms and conditions of the Remediation Trust as such shall be prepared, finalized, and presented to the Court at the Confirmation Hearing.

26.     "REMEDIATION TRUST ASSETS" shall mean property of the Remediation Trust as set forth in the Remediation Trust Agreement, including the Remediation Trust Transferred Assets.

27.     "REMEDIATION TRUST INTERESTS" shall mean all interests whether present or future in real or personal property of the Remediation Trust;

28.     "REMEDIATION TRUSTEE" means the trustee appointed by the Debtor who shall be responsible for overseeing the remediation and liquidation of the Remediation Trust Assets.

29.     "PETITION DATE" shall mean the date Debtor filed a voluntary chapter 11 petition.

30.     "PLAN" shall mean this Plan of Reorganization in its present form or as it may be amended or modified.

31.     "PRIORITY CLAIM" shall mean any claim to the extent entitled to priority in payment under § 507.

32.     "PRO-RATA" shall mean the amount of cash or property to be paid or distributed to a claimant with respect to an Allowed Claim on a particular date, in accordance with the ratio, as of such date, of the dollar amount of the Allowed Claim of such person in the indicated class to the aggregate dollar amount of Claims in the indicated class (including, in each such calculation, the full amount of Disputed Claims in the class which have been asserted or are otherwise pending and which have not yet been allowed or otherwise disposed of).

33.     "PROTECTED PARTY" and/or "PROTECTED PARTIES" shall mean William E. Oakley, James C. Barker, and Cronly and their respective heirs, successors, and assigns.

34.     "SALE" shall mean the disposition of certain assets of Debtor through a transfer of ownership from Debtor to another person or entity as set forth in this Plan.

35.     "SALE PROCEEDS" mean the remaining funds of a sale of certain assets of Debtor, after payment of all reasonable and ordinary closing costs, (including but not limited to ad valorem taxes, commissions and any other costs permitted under 11 U.S.C. § 506(c)).

36.     "SECURED CREDITORS" shall mean all creditors who hold a lien, security interest or any other encumbrance which have been properly perfected as required by law with respect to property owned by Debtor, to the extent of the value of the collateral.

37.     "SUBSTANTIAL CONSUMMATION" shall mean the time the reorganized Debtor has commenced the distribution of initial Plan payments to all creditor classes.

38.     "TAX CLAIM" shall mean any claim entitled to priority in treatment pursuant to 11 U.S.C. § 507(a)(8).

### III.  CLASSIFICATION AND TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

Debtor classifies the following classes of claims, indicating whether said Class is impaired or unimpaired, and proposes the following treatment:

**A.     Class 1 - Administrative Costs:**

(1)     Description of Claims.   Class 1 consists of claims for any cost or expense of administration pursuant to 11 U.S.C. §§ 503, 506, and 507.

The following Claims of professionals will be paid subject to Court approval:

| Professional | Services Provided | Amount Owed |
|---|---|---|
| The Law Offices of Oliver & Cheek, PLLC | Attorney for Debtor | To be determined by the Court |
| Ciara L. Rogers | Sub V Trustee | To be determined by the Court |
| DMJPS, PLLC/Gregory D. Miller | Accountant | To be determined by the Court |

(2)     Impairment.     This class will be unimpaired.

(3)      Treatment.      Administrative costs and expenses approved by the Court shall be paid in cash and in full from the liquidation of Debtor's Personal Property (the "Liquidation Proceeds"). The Debtor anticipates the only administrative claims will be those of the Debtor's professionals and the Trustee.

**NOTICE OF BAR DATE: All administrative claims, other than claims of a court approved professional, shall be filed no later than the first hearing date set for confirmation of the Plan. Otherwise, such claims shall be waived and shall not be asserted against Debtor at any time.**

B.      **Class 2 – Ad Valorem Taxes:**

(1)      Description of Claims.  Class 3 consists of Claims for taxes owed by Debtor to any city, county, or other municipality or taxing entity entitled to tax the property of Debtor based upon the value of the property assessed.  No claims have been filed in this class.

(2)      Impairment.      This class will be unimpaired.

(3)      Treatment.      Debtor proposes to pay claims in this class with quarterly payments over a period of five (5) years from the Date of the Order of Relief.  Quarterly payments shall commence on the earlier of January 15th, April 15th, July 15th, or October 15th following the Effective Date and shall continue quarterly thereafter, and shall include interest at the applicable rate imposed by the tax collector until paid in full.  Debtor does not anticipate that any such claims will be filed.

Ad valorem taxes for the current tax year may be treated as a prepetition claim and not as an administrative expense.  *See In Re St. Lawrence Homes, Inc., Case No. 09-00775-8, Order dated July 28, 2010, citing In Re Members Warehouse, Inc., 991 F.2d 116, 118-119 (4th Cir. 1993).*

C.      **Class 3 – Tax Claims:**

(1)      Description of Claims.   Class 3 consists of claims against Debtor for income taxes, withholding taxes, unemployment taxes and/or any and all other taxes levied or entitled to be levied against Debtor by the Internal Revenue Service or the North Carolina Department of Revenue plus interest as allowed by law.  Debtor is aware of the following Claim(s) in this class:

| Taxing Entity | Claim No. | Amount Owed |
|---|---|---|
| Internal Revenue Service | 2 | $577.33 |
| NC Department of Revenue, Sales & Use Tax | 1 | $1,356.75 |

(2)      Impairment. This class will be unimpaired.

(3)      Treatment.   Debtor proposes the following treatment:

**Costs and expenses of administration**, if any, shall be paid in cash and in full including accruals to date of payment within thirty (30) days from the Effective Date.

**Unsecured priority tax claims**, if any, described in Bankruptcy Code § 507(a)(8) shall be paid in full from the Liquidation Proceeds.  Any such allowed claim shall include interest at the rate determined under applicable nonbankruptcy law.  Notwithstanding the foregoing, the Holder of an allowed unsecured priority tax claim shall not be entitled to receive any payment on account of any

penalty arising with respect to or in connection with the allowed unsecured priority tax claim. Any Claim or demand for any such penalty will be subject to treatment as an Unsecured Claim, to the extent allowed. Debtor does not anticipate that any such claims will be filed.

**Secured claimants**, if any, shall retain their secured interest in the property of the Debtor. The taxing authority shall retain its lien and secured status as to the underlying secured tax liability, plus accruing interest at the statutory rate from the Effective Date. The Debtor proposes to pay any such claims in full, from the Liquidation Proceeds. Any such allowed claim shall include interest at the rate determined under applicable nonbankruptcy law. Notwithstanding the foregoing, the Holder of any such claim shall not be entitled to receive any payment on account of any penalty. Any Claim or demand for any such penalty will be subject to treatment as an Unsecured Claim, to the extent allowed. The Debtor does not believe there are any claims in this class.

In the event that Debtor fails to timely make a required payment as to any claim of the North Carolina Department of Revenue (the "Department"), then, subject to a ten (10) day right to cure following written notice of default from the Department, the Department shall be permitted to exercise any and all of its collection remedies under non-bankruptcy law as to any and all of its claims without further order of the Court. The rights of the Department to setoff under 11 U.S.C. § 553 shall not be altered by the Plan or the confirmation order entered in this matter and are expressly reserved. The claim of the North Carolina Department of Revenue is subject to adjustment on account of federal corrections, as required by N.C. Gen. Stat. § 105-130.20 (for corporations, LLCs and other entities) and N.C. Gen. Stat. § 105-159 (for individuals). Notwithstanding any other provisions of the Plan and the Confirmation Order, the Department shall retain any and all statutory tax liens that may have arisen by operation of statute prior to the Petition Date, except to the extent expressly stated in the Plan below.

**Unsecured general tax claims,** if any, will be treated as provided below in the section relating to "General Unsecured Claims."

### D.    **Class 4: Governmental Claims**

(1)    <u>Description of Debt</u>. On February 1, 2023, the United States Environmental Protection Agency ("EPA") sent Debtor a *Notice of Intent to Perfect a Lien Pursuant to CERCLA Section 107(l) at the Wright Chemical Corporation Superfund Site in Riegelwood, North Carolina*. Also on February 1, 2023, the EPA filed a *Notice of Federal Lien* on each of five parcels of Debtor's Real Property, known by file nos. 23-M-13, 23-M-14, 23-M-15, 23-M-16, and 23-M-17. On or about August 8, 2023, the United States of America, by the authority of the Attorney General of the United States, and at the request of the EPA filed a Complaint in the Eastern District of North Carolina, Wilmington Division, known by case no. 7:23-cv-01150-FL (the "Governmental Lawsuit"). The Governmental Lawsuit asserts several causes of action ("Governmental Claims") against Debtor based on alleged environmental violations purportedly ongoing at Debtor's Real Property.

(2)    <u>Impairment</u>.    This class will be impaired.

(3)    <u>Treatment</u>.    This obligation shall be treated as a secured obligation. The Debtor will deed all of the Real Property to the United States in full satisfaction of the Governmental Claims.

Following Debtor's deed of the Real Property to the United States in full satisfaction of the Governmental Claims, the United States shall within sixty days of the Effective Date of the confirmed Plan cause to be filed in the Governmental Litigation, a dismissal as to Debtor, and shall otherwise

indicate to the court as necessary and appropriate that any judgment ordered by the court is fully satisfied.

      E.    **Class 5 – General Unsecured Claims:**

      (1)    <u>Description of Class</u>.  Class 5 consists of all allowed, undisputed, non-contingent unsecured claims and deficiency claims listed on the Petition or as otherwise approved by the Court, which are not Trade Vendors.

      (2)    <u>Impairment</u>.  This class will be impaired.

      (3)    <u>Treatment</u>.  The total Claims in this Class, as of the date of this filing, is $197,619.14 as shown on <u>Exhibit B</u> attached hereto. Debtor shall pay allowed general unsecured claims in this Class from Liquidation Proceeds, in accordance with the priorities of the Code and orders of the Court.

      This Class also includes all claims which are not otherwise specifically classified by this Plan. The Claims should include, but not be limited to, creditors whose Claims may arise out of the rejection of executory contracts and secured creditors to the extent that the Court or the terms of this Plan deems them to be unsecured in whole or in part or to the extent that such Claim may not be specifically dealt with in the treatment of a particular class or any of these.  In determining whether a Claim, that is otherwise allowable, should be designated into this Class as opposed to any other Class in this Plan, this Class is an inclusive one rather than exclusive.

      Debtor may investigate and pursue avoidance actions pursuant to 11 U.S.C. §§ 547 and 548. Any funds collected through such actions will be distributed in accordance with the priorities established by the Bankruptcy Code and orders of the Court.

      F.    **Class 6 - Executory Contracts and Unexpired Leases:**

      (1)    Description of Class.   Debtor is a party to the following executory contract(s) and unexpired leases.

| Party | Type of Agreement |
|---|---|
| Entegris, Inc. | Lease |

      (2)    Impairment.  This class will be impaired.

      (3)    Treatment.   Pursuant to 11 U.S.C. § 365, Debtor hereby rejects the aforementioned unexpired lease as of the Effective Date.

      **IV.  TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

      Except as otherwise specified in this Plan, all contracts which exist between Debtor and any individual or entity, whether such contract be in writing or oral, which have not heretofore been rejected or heretofore been approved by Orders of the Court are hereby specifically rejected; provided, however, that this provision is not intended to reject and does not reject any agreement for the renewal or the extension of any loan or funds, presently binding and in effect between Debtor and any secured creditor.  Debtor hereby assumes all shareholder agreements and operating agreements.

      Any person with a Claim arising from such rejection shall be deemed to hold a general

unsecured claim and shall file a proof of claim within sixty (60) days of the Effective Date or be forever barred from asserting any Claim relating to such rejection.

### V.  MEANS OF IMPLEMENTATION AND EXECUTION OF PLAN

Debtor proposes to make payments under the Plan from the Remediation Trust through the liquidation of the Remediation Trust's Transferred Assets and as set forth in Article I, Section B. Debtor shall disburse the Remediation Trust Proceeds in accordance with the terms of this Plan, the priorities of the Code and the orders of the Court.

A.   The Remediation Trust

1. *Creation and Governance of the Remediation Trust*

On or prior to the Effective Date, Debtor shall execute the Remediation Trust in accordance with the Plan in each case for the benefit of the Remediation Trust Beneficiaries. Additionally, on or prior to the Effective Date, the Debtor shall irrevocably transfer and shall be deemed to have irrevocably transferred to the Remediation Trust all of its rights, title, and interest in and to all of the Remediation Trust Assets, and in accordance with section 1141 of the Bankruptcy Code, the RemediationTrust Assets shall automatically vest in the Remediation Trust free and clear of all Claims, Liens, encumbrances, or interests subject only to the Remediation Trust, as provided for in the Remediation Agreement, and transfer, reporting, sales, use, or other similar tax.

The Remediation Trust shall be governed by the Remediation Trust Agreement and administered by the Remediation Trustee. The powers, rights, and responsibilities of the Remediation Trustee shall be specified in the Remediation Trust Agreement and shall include the authority and responsibility to, among other things, take the actions set forth, subject to any required reporting as may be set forth in the Remediation Trust Agreement. The RemediationTrust shall be responsible for overseeing the remediation and liquidation of the Remediation Trust Assets. Other rights and duties of the Remediation Trustee shall be as set forth in the Remediation Trust Agreement.

2.   *Purpose of the Remediation Trust.*

The Remediation Trust shall be established for the purpose of overseeing the remediation and liquidation of the Remediation Trust Assets.

3.   *Remediation Trust Agreement.*

The terms of the Remediation Agreement shall be set forth in the Remediation Agreement and will provide for among other things the remediation and liquidation of the Remediation Trust Assets and the release of any rights to or claims of indemnification that may be asserted against the Debtor by its interest holders and officers.

4.   *Remediation Trust Expenses.*

From and after the Effective Date, the Remediation Trust shall, in the ordinary course of business and without the necessity of any approval by the Bankruptcy Court, pay the reasonable

professional fees and expenses incurred by the Remediation Trust and any professionals retained thereby.

     5.  *Dissolution of the Remediation Trust.*

    Upon dissolution of the Remediation Trust pursuant to the Remediation Trust Agreement, any remaining RemediationTrust Assets that exceed the amounts required to be paid under the Plan will be transferred in the sole discretion of the Remediation Trustee.

    B.  <u>Liquidation of Assets</u>.  The Remediation Trust will use its best efforts to sell its tangible real and personal property.

    C.  <u>Distribution of Liquidation Proceeds</u>.  The proceeds generated from the liquidation and collection of Remediation Trust Asses shall be distributed by the Remediation Trustee following entry of and in accordance with further orders of the court authorizing such distributions.

    D.  <u>Sale Free and Clear of Liens</u>.  Any real and personal property owned by Debtor that will be sold pursuant to this Plan will be sold free and clear of all liens, encumbrances, claims, interests, or other obligations.  In order to expedite the sale process, provide clear title to the properties sold, and satisfy certain anticipated requirements of title insurance companies providing title insurance to purchasers, simultaneous with the entry of the Order Confirming Plan, the Court will enter a free and clear order, which shall provide that all sales will be free and clear of all liens, interests, and other claims or interests.  All real or personal property sold by Remediation Trustee shall be sold pursuant to the free and clear order to be entered.  No further motions related to the sales of property shall be required; provided however, Remediation Trustee may file such motions and seek such orders to the extent needed to provide reasonable comfort or accommodation to the purchaser(s) or to specify the method of distribution of the sales proceeds.

    E.  <u>Distribution of Sales Proceeds</u>.  Upon the sale of any real or personal property proposed to be sold by this Plan, the liens secured by such property shall attach to the net proceeds of sale remaining after payment of costs of sale and all reasonable and ordinary closing costs, (including but not limited to ad valorem taxes, commissions, and any other costs permitted under Section 506(c) of the Code), and shall be paid to lienholders in accordance with the priorities of such liens, and then to other creditors in accordance with the priorities of the Code.  In the event the net proceeds of sale are insufficient to satisfy all claims within a class, such proceeds to be distributed to such class will be distributed pro rata.  Remediation Trustee may elect to file additional motions with the Court setting forth the proposed distribution of any excess sales proceeds prior to distribution to creditors.

    F.  <u>Preservation of Right to Credit Bid</u>.  The secured creditors shall retain the rights granted to them under § 363(k) to purchase the collateral via a credit bid upon the same or better terms of the proposed purchaser.  In the event of a private sale which shall not satisfy the claim of the secured creditor(s) in full, Remediation Trustee shall provide the secured creditor with a copy of the purchase contract in the manner designated by such creditor and such creditor shall have until no later than one hour before Remediation Trustee's deadline for accepting such contract to inform Remediation Trustee in writing whether it wishes to purchase the property via a credit bid upon the same or better terms than that offered by the purchaser.  In the event the creditor does not provide written notification to Remediation Trustee that it will purchase the property by credit bid, the creditor shall be deemed to waive its right to credit bid.  The secured creditor shall be responsible for providing Remediation Trustee with information concerning the method by which it wishes to be notified to potential purchase

contracts for purposes of credit bidding (i.e. fax, electronic mail, or telephonic notification).

G.    <u>Deficiency Claims</u>.    A secured creditor who receives the collateral securing their obligation shall have sixty (60) days after the Effective Date to file a proof of claim for any deficiency or be forever barred from asserting any deficiency claim and such obligation shall be deemed paid in full.  Such proof of claim shall include an itemization of the principal, interest, and other costs.  Any such deficiency claim shall be treated in the unsecured creditor class.  In the event Debtor obtains its Final Decree prior to the determination of any deficiency claim, such secured creditor shall inform the Disbursing Agent of such deficiency claim within the same time period.  In such event, a proof of claim shall not be required, but the secured creditor shall provide notice of such deficiency claim to the Disbursing Agent in a writing containing the same information.

H.    <u>De Minimis Distributions</u>.    No distribution of less than fifty dollars ($50.00) shall be required to be made to any holder of an allowed unsecured claim. Instead, Debtor shall have the option of retaining such funds to be distributed at the time of the final distribution in accordance with the Plan.

I.    <u>Unclaimed Property</u>.    If any distribution remains unclaimed for a period of ninety (90) days after it has been delivered, or attempted to be delivered, such unclaimed property shall be forfeited by such holder of the claim and the Disbursing Agent shall not attempt to make any further distribution of such holder of the claim. Undistributed property shall be returned to Debtor for distribution in accordance with the Plan.  If a distribution check is not negotiated by the creditor within 90 days of the date of the check, or the distribution check is not deliverable to the creditor by way of First Class U.S. Mail, addressed to the address listed in the Creditor's Proof of Claim or on the Petition, Debtor will be entitled to void said check and retain said funds to be used in Debtor's discretion.  Any Creditor whose funds are once not negotiated or are returned as described above shall not be part of any subsequent distribution.

J.    <u>Preservation of Avoided Transactions for the Benefit of the Estate</u>.    All transactions avoided or otherwise set aside pursuant to Sections 544, 547, 548, and/or 549, if any, shall be preserved for the benefit of the Estate pursuant to Section 551 and applicable case law.  Funds received from such transactions shall be distributed to creditors according to the priorities of the Code.  In the case of any lien that has been avoided which encumbered certain properties of Debtor and has since been avoided, the lien shall remain on the public record and shall remain an encumbrance upon the real property.  However, all distributions made towards such deed of trust shall be distributed not to the named beneficiary of such deed of trust but shall instead be paid to the Disbursing Agent for distribution to creditors.

J.    <u>Timing of Distributions</u>. Distributions under the Plan shall be made on the Distribution Date; provided however, that Court approved professionals may be paid as such fees and expenses are approved by the Court.  Any distribution required to be made hereunder on a day other than a business day shall be made on the next succeeding business day.  Any distribution required to be made hereunder on a day other than a business day shall be made on the next succeeding business day.  Debtor reserves the right to pay any Claim on an earlier or expedited schedule.

K.    All payments or distributions made by Debtor shall be applied as indicated in the respective treatment for each creditor, or if no such application of payments is specified, then payments shall be applied first to outstanding interest and then to principal.  In the event that a creditor claims that it is entitled to costs and/or attorneys' fees, such creditor must file a fee application with the Court and such costs and attorneys' fees must be approved by the Court prior to such costs and attorneys' fees becoming part of the creditor's allowed claim.

L.     Debtor will execute and deliver all documentation to the Bankruptcy Court and to all parties in interest who are entitled to receive the same as required by the terms of the Plan and the Bankruptcy Code.

M.     Revocation of Plan.  Debtor has reserved the right to revoke and withdraw this Plan before the entry of the Confirmation Order.  If Debtor revokes or withdraws this Plan, or if confirmation of this Plan does not occur, then, with respect to Debtor, this Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against Debtor, as the case may be, or any other Person or to prejudice in any manner the rights of Debtor, as the case may be, or Person in any further proceedings involving such Debtor.

N.     Debtor shall take such other action as necessary to satisfy the other terms and requirements of the Plan and the Bankruptcy Code.

O.     Except as expressly stated in the Plan or allowed by a Final Order of the Bankruptcy Court, no interest, penalty, or late charge shall be allowed on any claim subsequent to the Petition Date, unless otherwise required by the Code.  No attorney's fees or expenses shall be paid with respect to any claim except as specified herein or as allowed by a Final Order of the Court.

P.     Confirmation of this plan shall constitute a finding that Debtor does not waive, release, or discharge, but rather retains and reserves any and all pre-petition claims and any and all post-petition claims that it could or might assert against any party or entity arising under or otherwise related to any state or federal statute, state or federal common law, and any and all violations arising out of rights or claims provided for by Title 11 of the United States Code, by the FEDERAL RULES OF BANKRUPTCY PROCEDURE, or by the Local Rules of this Court, including all rights to assert and pursue any and all avoidance actions, preference actions, and any other actions pursuant to 11 U.S.C. §§ 545, 546, 547, 548, and 550, except to the extent such avoidance actions, preference actions, or other actions were assigned to a creditor(s) as part of Debtor's Plan.  Further, Debtor retains all rights to assert and pursue all claims under 11 U.S.C. § 542, including without limitation actions to seek turnover of estate assets, actions to recover accounts receivable, and/or actions to invalidate setoffs.

Q.     Administrative claims unpaid on the Effective Date will be paid from funds on hand or as the parties otherwise agree.

R.     All objections to claims, fee applications, and adversary proceedings will be filed with the Court within sixty (60) days after the Effective Date; provided however, that Debtor retain the right to object or otherwise pursue any claims against secured creditors relating to the payoff and/or satisfaction of their secured claims.

S.     Claims Paid by Third Parties.  To the extent a claim holder receives payment in full or in part on account of such claim from a party that is not Debtor, such creditor shall, within two (2) weeks therefore, inform Debtor of such payment, and such creditor's claim shall be reduced accordingly for purposes of distribution under the Plan.

T.     Exemption from Transfer Taxes.  Pursuant to § 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any instrument of transfer under, in furtherance of, or in connection with the Plan, including without limitation, deeds, or bills of sale or assignments of personal property executed in

connection with any of the transactions contemplated under the Plan, will not be subject to any stamp, real estate transfer, mortgage recording, sales, use, or other similar tax. Each of the relevant state or local governmental officials or agents will forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment consistent with the applicable provisions of the Plan.

U.   <u>Procedure for Payment of Professional Fees</u>.  Current Court approved professionals shall not be subject to the fee application process for services rendered post-confirmation in furtherance of implementation of the confirmed Plan.

V.   <u>Escrow Arrangements</u>. Unless otherwise stated in individual creditor treatments herein, Debtor will no longer make any escrow payments for taxes, insurance, or any other expenses generally paid through escrowed funds. Debtor will pay such expenses directly from and after the Effective Date. Escrowed funds held by a creditor shall be turned over to Debtor on the Effective Date.

## VI.  PRESERVATION OF SECTION 506(c) CLAIMS

Notwithstanding confirmation of the Plan and the occurrence of the Effective Date, Debtor shall have the right to seek recovery of the cost of maintaining and preserving any collateral or property.

## VII.  PRESERVATION OF CLAIMS AND AVOIDANCE ACTIONS

Notwithstanding anything to the contrary in the Plan or Disclosure Statement, the provisions of the Plan, Disclosure Statement, or Order Confirming Plan shall not have and are not intended to have, any res judicata or collateral estoppel effect with respect to any causes of action that Debtor may assert, regardless of whether and to what extent such causes of action are specifically described in the Plan or Disclosure Statement. Unless any causes of action are expressly waived, relinquished, released, compromised, or settled in the Plan or by Final Order of the Court, all such causes of action are expressly reserved and preserved for later adjudication and, therefore, no preclusion doctrine, including without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel, or laches shall apply so such causes of action upon or after confirmation of the Plan. Furthermore, notwithstanding any provision or interpretation to the contrary, nothing in the Plan or Order Confirming Plan, including the entry thereof, shall be deemed to constitute a release, waiver, impediment, relinquishment, or bar, in whole or in part, of or to any recovery or any other claim, right, or cause of action possessed by Debtor prior to the Effective Date. This shall include, but is not limited to all pre-petition claims and any and all post-petition claims that he could or might assert against any party or entity arising under or otherwise related to any state or federal statute, state or federal common law, and any and all violations arising out of rights or claims provided for by Title 11 of the United States Code, by the Federal Rules of Bankruptcy Procedure, or by the Local Rules of this Court, including all rights to assert and pursue any and all avoidance actions, preference actions, and any other actions pursuant to 11 U.S.C. §§ 545, 546, 547, 548, 550, and 542, including without limitation actions to seek turnover of estate assets, actions to recover accounts receivable, and/or actions to invalidate setoffs.

## VIII.  SIMILAR TREATMENT FOR EACH CLAIM WITHIN A CLASS

The claims stated herein, by modification, Court Order, or other legally appropriate manner,

may be modified throughout the course of payment under this Plan. Debtor, upon full payment as called for under the notes and deeds of trust, shall be entitled to have the note marked paid and satisfied and the deed of trust canceled as a matter of record, by the Trustee, or by appropriate application to this Bankruptcy Court, and upon a showing that the full amount of the monthly payments were made by Debtor.

## IX.  GATEKEEPING INJUNCTION AND RELATED PROVISIONS

### A.    General

Notwithstanding anything contained in the Plan to the contrary, the allowance, classification and treatment of all Allowed Claims and Equity Interests and their respective distributions and treatments under the Plan shall take into account the relative priority and rights of the Claims and the Equity Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, § 510 of the Bankruptcy Code, or otherwise.

### B.    Discharge of Claims

To the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, except as otherwise expressly provided by this Plan or the Confirmation Order, all consideration distributed under this Plan will be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims and Equity Interests of any kind or nature whatsoever against the Debtor and any of its Assets or properties, and regardless of whether any property will have been distributed or retained pursuant to this Plan on account of such Claims or Equity Interests. Except as otherwise expressly provided by this Plan or the Confirmation Order, upon the Effective Date, the Debtor and its Estate will be deemed discharged and released under and to the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code from any and all Claims and Equity Interests of any kind or nature whatsoever, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code.

### C.    Preservation of Rights of Action

####     1.     *Maintenance of Causes of Action*

Except as otherwise provided in this Plan, after the Effective Date, the Debtor will retain all rights to commence, pursue, defend, litigate or settle, as appropriate, any and all Causes of Action included in the Debtor Assets whether existing as of the Petition Date or thereafter arising, in any court or other tribunal including, without limitation, in an adversary proceeding filed in the Chapter 11 Case and, as the successors in interest to the Debtor and the Estate, may, and will have the exclusive right to, enforce, sue on, settle, defend, compromise, transfer or assign (or decline to do any of the foregoing) any or all of the Causes of Action without notice to or approval from the Bankruptcy Court.

####     2.     *Preservation of All Causes of Action Not Expressly Settled or Released*

Unless a Cause of Action is expressly waived, relinquished, released, compromised or settled in this Plan or any Final Order (including, without limitation, the Confirmation Order), such cause of action is expressly reserved for later adjudication by the Debtor (including, without limitation, causes of action not specifically identified or of which the Debtor may presently be unaware or that may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time or facts or circumstances that may change or be different from those the Debtor now believes to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches will apply to such causes of action as a consequence of the confirmation, effectiveness, or consummation of this Plan based on this Plan or the Confirmation Order, except where such causes of action have been expressly released in this Plan or any other Final Order (including, without limitation, the Confirmation Order). In addition, the right of the Debtor to pursue or adopt any claims alleged in any lawsuit in which the Debtor is a plaintiff, defendant or an interested party, against any entity, including, without limitation, the plaintiffs or codefendants in such lawsuits, is expressly reserved.

## F.     Gatekeeping Injunction

Upon entry of the Confirmation Order, all Enjoined Parties are and shall be permanently enjoined on and after the Effective Date, from taking any actions to interfere with the implementation or consummation of the Plan. Enjoined Parties must first seek approval of the Bankruptcy Court before they may commence an action against the Protected Parties.

Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all Enjoined Parties are and shall be permanently enjoined, on and after the Effective Date, with respect to any Claims and Equity Interests, from directly or indirectly (i) commencing, conducting, or continuing in any manner any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtor, Protected Parties, or the property of the Debtor, (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering, enforcing, or attempting to recover or enforce, by any manner or means, any judgment, award, decree, or order against the Debtor, Protected Parties, or the property of the Debtor, (iii) creating, perfecting, or otherwise enforcing in any manner, any security interest, lien or encumbrance of any kind against the Debtor, Protected Parties, or the property of the Debtor, (iv) asserting any right of setoff, directly or indirectly, against any obligation due to the Debtor or against property or interests in property of the Debtor, except to the limited extent permitted under §§ 553 and 1141 of the Bankruptcy Code, and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

The gatekeeping injunctions set forth herein shall extend to and apply to any act of the type set forth in the immediately preceding paragraph against any successors of the Debtor and Protected Parties, including, but not limited to the Reorganized Debtor, the Remediation Trust and their respective property and interests in property.

Subject in all respects to the terms of this Plan, no Enjoined Parties may commence or pursue a claim or cause of action of any kind, including any claim or cause of action for indemnification, against the Debtor or any Protected Party that arose or arises from or is related to

the Chapter 11 Case, the Governmental Lawsuit, the negotiation of the Plan, the administration of the Plan or property to be distributed under the Plan, the wind down of the business of the Debtor or Reorganized Debtor, the administration of the Remediation Trust, or the transactions in furtherance of the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such claim or cause of action represents a colorable claim of any kind, including, but not limited to, individual and/or owner-operator CERCLA liability, negligence, bad faith, criminal misconduct, willful misconduct, fraud, or gross negligence and (ii) specifically authorizing such Enjoined  Party to bring such claim or cause of action. The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a claim or cause of action is colorable and, only to the extent legally permissible and as provided for in this Plan, shall have jurisdiction to adjudicate the underlying colorable claim or cause of action.

## X.  PROVISIONS GOVERNING DISTRIBUTIONS

A.      Delivery of Distributions in General.  Distributions to holders of allowed claims shall be made:  (i) at the addresses set forth in the proofs of claim filed by such holders; (ii) at the addresses set forth in any written notices of address change submitted to the Court or Attorney for Debtor after the date on which any related proof of claim was filed; or, if the information described in clauses (i) or (ii) is not available, (iii) at the addresses reflected in Debtor's schedules of liabilities.

B.      Distribution Dates.  It is the intent of this Plan that the distribution shall occur as early as practicable following the Effective Date.

C.      Cure Period.   The failure by Debtor to timely perform any term, provision or covenant contained in this Plan shall not constitute an Event of Default unless and until Debtor has been given thirty (30) days written notice of the alleged default and provided an opportunity to cure. Until the expiration of the thirty (30) day cure period, Debtor shall not be deemed to be in default, and any performance or actions taken during such thirty (30) day cure period shall be considered timely for all purposes.  Such written notice pursuant to the Plan provisions and the passage of the thirty (30) day cure period shall constitute conditions precedent to bringing or filing any contested action by any person to enforce any right granted under this Plan.

D.  The Subchapter V Trustee shall not make any payments under the terms of this plan.

## XI.  ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY AN IMPAIRED CLASS

A.      Each Impaired Class Entitled to Vote Separately.  Each impaired class of claims shall be entitled to have the holders of claims therein vote separately as a class to accept or reject the Plan.

B.      Acceptance by a Class of Creditors.  Consistent with § 1126(c) of the Bankruptcy Code, and except as provided in § 1126(e) of the Bankruptcy Code, a class of claims shall have accepted the Plan if the Plan is accepted by holders of at least two-thirds (2/3) in dollar amount and more that one-half (1/2) in number of the allowed claims of that class that have timely and properly voted to accept or reject the Plan.

C.      Claimants Entitled to Vote.  Holders of impaired claims shall be entitled to vote if:

(1)      Such claim has been filed against Debtor in a liquidated amount or has been

listed on Debtor's schedules other than as contingent, unliquidated or disputed, and as to which no proof of claim has been filed.  The claim shall be allowed solely for the purpose of voting on the Plan in the amount in which such claim has been filed or listed on Debtor's schedules; or

(2)      Such claim has been filed against Debtor or listed on Debtor's schedules and is the subject of an existing objection filed by Debtor, and is temporarily allowed for voting purposes by order of the Court in accordance with Bankruptcy Rule 3018.

If an impaired Claim has been filed in an undetermined amount, in which case the creditor holding such claim shall not be entitled to vote unless Debtor and the holder of the claim agree on an amount for voting purposes or the Court enters an order setting the amount of the claim that the creditor may ballot.

Any creditor holding two or more duplicate claims shall be entitled to vote only one claim.

D.      <u>Confirmation Hearing</u>.  The Court will set a hearing on the confirmation of the Plan to determine whether the Plan has been accepted by the requisite number of creditors and whether the other requirements for confirmation of the Plan have been satisfied.

E.      <u>Acceptances Necessary to Confirm the Plan</u>.  At the Confirmation Hearing, the Court shall determine, among other things, whether the Plan has been accepted by each impaired class.  Under § 1126 of the Bankruptcy Code, an impaired class of Creditors is deemed to accept the Plan if at least two-thirds (2/3) in amount and more than one-half (1/2) in number vote to accept the Plan.  Further, unless there is unanimous acceptance of the Plan by an impaired class, the Court must also determine that class members will receive property with a value, as of the Effective Date of the Plan, that is not less than the amount that such class member would receive or retain if Debtor's assets were liquidated as of the Effective Date of the Plan under Chapter 7 of the Bankruptcy Code.

F.      <u>Confirmation of Plan Without Necessary Acceptances</u>.  The Bankruptcy Code provides that the Plan may be confirmed even if it is not accepted by all impaired Classes.  In order to be confirmed without the requisite number of acceptances of each impaired class, the Court must find that at least one impaired class has accepted the Plan without regard to the acceptances of insiders, and the Plan does not discriminate unfairly against, and is otherwise fair and equitable, to such impaired class.  In the event that any class votes against the plan, Debtor hereby requests and move the Court under the provisions of this Plan entitled "cramdown," for confirmation pursuant to the "cramdown" provisions of § 1129(b) of the Bankruptcy Code.  In connection therewith, Debtor shall be allowed to modify the proposed treatment of the allowed claims in any class that votes against the Plan consistent with § 1129(b)(2)(A).

## XII.  "CRAMDOWN" FOR IMPAIRED CREDITORS NOT ACCEPTING THE PLAN

In respect to any class of creditors impaired but not accepting the Plan by the requisite majority in number or two-thirds (2/3) in amount, the proponent of this Plan requests the Court to find that the Plan does not discriminate unfairly and is fair and equitable in respect to each class of claims or interests that are impaired under the Plan and that the Court confirm the Plan without such acceptances by the said impaired classes.  Debtor will also request that the Court establish a value for any assets, the value of which is in dispute between Debtor and any secured creditor, at a valuation hearing under Section 506 of the Bankruptcy Code, to be scheduled at the same time as the hearing on confirmation

of the Plan.

## XIII.  EFFECT OF CONFIRMATION

A.    Except as otherwise provided in the Plan, the confirmation of the Plan vests all of the property of the estate in Debtor.

B.    **INJUNCTION**.  **As of the Confirmation Date, except as otherwise provided in the Plan or the Confirmation Order, all persons that have held, currently hold, or may hold a claim, equity interest, or other debt or liability that is treated pursuant to the terms of the Plan or that is otherwise enjoined pursuant to Section 1141 of the Code, are enjoined from taking any of the following actions on account of any such claims, equity interests, Debtor or liabilities, other than actions brought to enforce obligations under the Plan: (i) commencing or continuing in any manner any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting, or enforcing any lien or encumbrance; (iv) asserting a setoff or right of recoupment of any kind against any debt, liability, or obligation; and/or (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation order. Notwithstanding the foregoing, the Plan does not release or waive any claims that Debtor may have against any party in interest.  This injunction shall not affect any creditor's ability to enforce rights against persons other than Debtor and property not owned by Debtor, except as provided for herein.**

C.    Confirmation of the Plan shall satisfy all claims or causes of action arising out of any claim settled under the terms of the Plan.

## XIV.  RELEASE OF TITLE TO PROPERTY

A.    <u>Vehicles</u>.  Upon the satisfaction or other discharge of a security interest in a motor vehicle, mobile home, or in any other property of this estate in bankruptcy for which the certificate of title is in the possession of the secured party, the secured party shall within ten (10) days after demand and, in any event, within thirty (30) days of receipt of the payment in full pursuant to the Plan, execute a release of its security interest on the said title or certificate, in the space provided therefore on the certificate or as the Division of Motor Vehicles prescribes, and mail or deliver the certificate and release to Debtor. Confirmation of this Plan shall impose an affirmative and direct duty on each such secured party to comply with the provision.  This provision shall be enforced in a proceeding filed before the Bankruptcy Court and each such creditor consents to such jurisdiction by failure to file any timely objection to this Plan.  Such an enforcement proceeding may be filed by Debtor in this case either before or after the closing of this case.  Debtor specifically reserves the right to file a motion to reopen this case under Section 350 of Title 11 of the United States Code to pursue the rights and claims provided for herein.

B.    <u>Real Property</u>. Pursuant to N.C.G.S. § 45-36.9, upon the satisfaction or other discharge of a security interest in real property for which a creditor holds a properly secured mortgage, the secured party shall within thirty (30) days after demand or within thirty (30) days of payment in full pursuant to the Plan, submit for recording with the Office of the Register of Deeds for the applicable County a satisfaction of its security interest and mail or deliver the recorded satisfaction document or documents to Debtor.  The failure of any such party to comply with this section shall result in the imposition of statutory damages of $1,000.00, actual damages, costs and legal fees as provided for by Section 45-36.9(c) of the N.C. General Statutes.  Confirmation of this Plan shall impose an affirmative

and direct duty on each such secured party to comply with this provision. This provision shall be enforced in a proceeding filed before the Bankruptcy Court and each such creditor consents to such jurisdiction by failure to file any timely objection to this plan. Such an enforcement proceeding may be filed by Debtor in this case either before or after the closing of this case. Debtor specifically reserves the right to file a motion to reopen this case under Section 350(b) of Title 11 of the United States Code to pursue the rights and claims provided for herein including all remedies for damages and attorney fees under applicable State and Federal statutes.

## XV.  APPLICATION OF PLAN PAYMENTS

A.      All payments made by Debtor shall be applied as indicated in the respective treatment for each creditor, or if no such application of payments is specified, then payments shall be applied to principal and interest on a monthly basis according to the amortization schedule proposed for each creditor. In the event that a creditor is entitled to costs and/or attorneys' fees post-petition under Section 506(b) of the Code, such creditor must file an application in accordance with the Code and/or Bankruptcy Rules pertaining to approval of costs and/or attorney fees prior to such costs and/or attorneys' fees becoming part of the creditor's allowed claim. Confirmation of the Plan shall impose an affirmative duty and legal obligation on the holders and/or the servicers of any claims secured by liens, mortgages and/or deeds of trust to apply payments in the manner set forth in the Plan in accordance with Section 524(i).

B.      Confirmation of the Plan shall impose a duty on the holders and/or servicers of claims secured by liens on real property to apply the payments received from Debtor to the month in which they were made under the plan or directly by Debtor, whether such payments are immediately applied to the loan or placed into some type of suspense account and to otherwise comply with 11 U.S.C. § 524(i).

## XVI.  RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction of these proceedings pursuant to and for the purposes of Sections 105(a) and 1127 of the Code and for, without limitation, the following purposes, inter alia:

1.      to determine any and all objections to the allowance of claims and/or interests;

2.      to determine any and all applications for allowance of compensation for periods prior to or after the Confirmation Date;

3.      to determine any and all applications pending on the Confirmation Date for the rejection and disaffirmance or assumption or assignment of executory contracts and the allowance of any claim resulting therefrom;

4.      to determine all controversies and disputes arising under or in connection with the Plan;

5.      to determine all applications, adversary proceedings and litigated matters pending on the Confirmation Date;

6.      to effectuate payments under, and performance of, the provisions of the Plan, including, but not limited to, future sales of personal and real property retained by the Estate;

7.    to determine such other matters and for such other purposes as may be provided for in the Confirmation Order;

8.    to determine all disputes regarding property of the Estate;

9.    to establish and adjust procedures for the orderly administration of the Estate;

10.    to determine matters that are subject to proceedings duly removed to the Bankruptcy Court;

11.    to replace Debtor-in-possession with a Trustee for good cause shown.

12.    to determine and resolve questions concerning the existence of defaults under the Plan;

13.    to modify the Plan pursuant to 11 U.S.C. § 1127(b);

14.    to correct any defect, to cure any omission, to reconcile any inconsistency in the Plan or Confirmation Order as may be necessary to carry out the purposes and intent of the Plan; and

15.    to issue any order necessary to carry out the Plan.

## XVII.  MISCELLANEOUS PROVISIONS

A.    <u>Survival of Terms</u>.  The covenants, representations and agreements made in this Plan shall survive the Confirmation Date and the transactions contemplated herein.

B.    <u>Successors Bound</u>.  This Plan shall on the Consummation Date be binding upon and inure to the benefit of the respective heirs, successors and assigns of Debtor, and the holders of claims and interests.

C.    <u>Controlling Law</u>.  This Plan shall be read and construed and take effect in all respects in accordance with the law as set forth in the United States Bankruptcy Code and the Rules promulgated thereunder.

D.    <u>Further Assurance</u>.  If at any time, Debtor shall consider, or be advised, that any further releases, assurances or documents are reasonably necessary or desirable to carry out the provisions hereof, and the transactions contemplated herein, the holders of claims and the holders of interest shall, upon reasonable request, execute and deliver any and all documents and assurances, and do all things necessary or appropriate to carry out fully the provisions hereof.

E.    <u>Liens</u>.  Except as otherwise expressly set forth herein, all liens remaining in favor of any creditor in this action against the real property that arose prior to the filing of the petition shall be deemed to be released upon confirmation of the Plan.  Debtor shall request and all parties shall provide such additional documentation as may be necessary to effectuate these releases.

F.    <u>Incorporation of Disclosure</u>.  All the terms and conditions of the Disclosure Statement are incorporated herein by reference.

G.    <u>Credit Reporting</u>.       Each Creditor who regularly makes reports to credit reporting bureaus shall ensure that their reports accurately reflect that Debtor has filed bankruptcy and included all obligations owed to that Creditor in its Plan.  Further, all Creditors who make post-petition reports to credit reporting bureaus shall ensure that their reports accurately reflect the terms of all orders, including but not limited to cash collateral and orders confirming Debtor's Plan.  Failure to make accurate reports to credit bureaus shall constitute a violation of automatic stay provisions of 11 U.S.C. § 362, if made post-petition but pre-confirmation.  Alternatively, if erroneous reports are made post-confirmation, then those reports shall be treated as violations of the Order Confirming Plan after notice and a hearing on the alleged violations.  Debtor shall be exempted from the Fair Credit Reporting Act in pursuing a remedy against a Creditor for erroneous credit reporting and the Bankruptcy Court shall retain jurisdiction to hear such matters.

H.    <u>Adversary Proceedings.</u>  Debtor reserves the right to begin or continue any adversary proceedings permitted under Title 11, United States Code, and the applicable Bankruptcy Rules.  The proceeds from which, if any, will be distributed in accordance with the priorities of the Code.

I.    <u>Modification of Plan</u>.  Debtor may submit modifications of the Plan to the Court at any time prior to confirmation pursuant to § 1127.

J.    <u>Default Remedies</u>.   Any creditor may serve notice of a default on Debtor and Debtor's counsel.  Such notices shall be in writing and delivered by registered mail to Debtor.  Debtor shall have thirty (30) days to cure the default.  If the default is not cured, any creditor may take such action as the Code permits.  This provision shall be cumulative with other rights and remedies provided to parties in interest under the Bankruptcy Code.

K.    <u>Granting of Liens</u>.   If an existing lien on any property of Debtor contains language providing that the granting of a lien on that property shall be deemed an event of default, the granting of a lien in accordance with this Plan shall not be deemed an event of default.

L.    <u>Cancellation of Liens</u>.  Except as otherwise provided specifically in this Plan, any and all prepetition liens encumbering any of Debtor's assets, whether deeds of trust, UCC-1 financing statements, or otherwise, shall be deemed canceled of record upon the entry of the Confirmation Order.  Debtor shall be entitled to present this Plan, and the Confirmation Order to any public official charged with the maintenance of records regarding liens, and direct said official to cancel said liens of record.

## <u>XVIII.  DISCHARGE</u>

Upon completion of payments, Debtor and the Estate will be discharged from all Claims and Liens expressly provided for in the Plan.  The discharge will be fully effective against all Creditors regardless of whether they have voted to accept or reject the Plan and regardless of whether the Plan is confirmed by consent or by resort to the provisions of section 1129(b) of the Bankruptcy Code.  However, even though no discharge will be entered until all payments are completed, Debtor will seek to have the case closed upon substantial consummation as set forth in § 1101(2).  Further, Debtor will seek to have the case automatically re-opened pursuant to § 350(b) without the payment of a fee, upon the filing and service on all creditors and the Bankruptcy Administrator, of a Notice of Completion of Plan Payments and Request for Entry of Discharge, allowing all parties twenty (20) days to file a response.

Respectfully submitted, this the 29th day of October, 2024.

The Law Offices of Oliver & Cheek, PLLC

By:     s/George Mason Oliver
          GEORGE MASON OLIVER
          N.C. State Bar No. 26587
          Email: george@olivercheek.com
          PO Box 1584
          New Bern, NC  28563
          Telephone: (252) 633-1930
          Facsimile: (252) 633-1950
          *Attorneys for Debtor*

          s/Willliam E. Oakley
          William E. Oakley,
          Chairman
          Oak-Bark Corporation

**Oak-Bark Corporation - Case No. 23-03351-5-JNC**
**Exhibit A: Assets**

### ASSETS

| Real Property | | VALUE |
|---|---|---|
| NW corner of Fertilizer Rd and Neils Eddy Rd - PID: 89563 - 17.65 ac | $ | 247,100.00 |
| NW corner of Fertilizer Rd and Neils Eddy Rd - PID: 28677 - 3.53 ac | $ | 49,420.00 |
| 333 Neils Eddy Rd, Riegelwood, NC 28456 - PID: 89556 - 0.95 ac | $ | 13,300.00 |
| 333 Neils Eddy Rd, Riegelwood, NC 28456 - PID: 29802 - 78.54 ac | $ | 1,299,560.00 |
| 1493 Neils Eddy Rd, Riegelwood, NC 28456 - PID: 29803 - 3.39 ac | $ | 47,460.00 |
| **Total:** | **$** | **1,656,840.00** |

| Personal Property | | |
|---|---|---|
| Wells Fargo Business DIP Account (ending in 0252) | $ | 1,000.00 |
| Prepayments - Evanston Ins. Co. - Comm. Gen. Liability Policy # 8342 | $ | 1,359.60 |
| Prepayments - Covington Spec. Ins. Co. - Comm. Prop. Policy # 15 00 | $ | 2,107.00 |
| Prepayments - U.S. Liability Ins. Co. - Excess Liability Policy # 454H | $ | 450.00 |
| Dry projects plant equipment | $ | 10,000.00 |
| Patent #5507951, hexamine waste water treatment process | $ | - |
| Notes receivable - Entegris, Inc. | $ | 1,727,188.00 |
| **Total:** | **$** | **1,742,104.60** |

**Oak-Bark Corporation - Case No. 23-03351-5-JNC**
**Exhibit B: Liabilites**

| | | Claim # | | Claim Amount | |
|---|---|---|---|---|---|
| **Class 1:  Administrative** | | | | | |
| The Law Offices of Oliver & Cheek, PLLC | | | | To be determined by the Court | |
| Subchapter V Trustee, Ciara L. Rogers | | | | To be determined by the Court | |
| Gregory D. Miller and DMJPS PLLC | | | | To be determined by the Court | |
| | | | | | |
| **Class 2:  Ad Valorem Taxes** | | | | | |
| Columbus County Tax Collector | | | $ | - | |
| | | | | | |
| **Class 3:  Tax Claims** | | | | | |
| Internal Revenue Service | | 2 | $ | 577.33 | |
| North Carolina Department of Revenue | | 1 | $ | 1,356.75 | Secured |
| | **TOTAL** | | $ | **1,934.08** | |
| | | | | | |
| **Class 4: Governmental  Claims** | | | | | |
| United States | | | $ | - | Contingent, unliquidated and disputed |
| Environmental Protection Agency | | 9 | $ | 379,586.55 | Contingent, unliquidated and disputed |
| | | | | | |
| **Class 5: General Unsecured Creditors** | | | | | |
| Cronly Bluffs, LLC | | 4 | $ | 190,422.76 | |
| Cronly Bluffs, LLC | | | $ | - | Contingent, unliquidated and disputed |
| CTW Specialties | | | $ | 2,629.05 | |
| Eleanor G. Wright Lindemann | | | $ | - | Contingent, unliquidated and disputed |
| Elizabeth Wright McMillen | | | $ | - | Contingent, unliquidated and disputed |
| Entegris, Inc. | | 7 | $ | - | Contingent, unliquidated and disputed |
| Estate of Elizabeth L. Wright | | | $ | - | Contingent, unliquidated and disputed |
| Hexion Inc. | | 5 | $ | 526,269.00 | Contingent, unliquidated and disputed |
| Internal Revenue Service | | 2 | $ | 577.33 | |
| James C. Barker | | | $ | - | Contingent, unliquidated and disputed |
| Koch Sulfur Products Co. | | 6, 8 | $ | 1,612,254.34 | Contingent, unliquidated and disputed |
| McGrath North | | | $ | 3,990.00 | |
| Verizon Wireless | | 3 | $ | 1,099.89 | |
| William E. Oakley | | | $ | - | Contingent, unliquidated and disputed |
| | **TOTAL** | | $ | **2,337,242.37** | |
| | | | | | |
| **Class 6: Executory Contracts and Unexpired Leases** | | | | | |
| Entegris, Inc. | | | $ | - | |

**Oak-Bark Corporation - Case No. 23-03351-5-JNC**
**Exhibit C: Liquidation Analysis Unsecured Creditors**

| ASSETS | LIENHOLDER | AMOUNT OF LIEN | LIQUIDATION VALUE | EQUITY | |
|---|---|---|---|---|---|
| **Real Property** | | | | | |
| NW corner of Fertilizer Rd and Neils Eddy Rd - PID: 89563 - 17.65 ac | | $ - | $ 247,100.00 | $ 247,100.00 | |
| NW corner of Fertilizer Rd and Neils Eddy Rd - PID: 28677 - 3.53 ac | | $ - | $ 49,420.00 | $ 49,420.00 | |
| 333 Neils Eddy Rd, Riegelwood, NC 28456 - PID: 89556 - 0.95 ac | | $ - | $ 13,300.00 | $ 13,300.00 | |
| 333 Neils Eddy Rd, Riegelwood, NC 28456 - PID: 29802 - 78.54 ac | USEPA | $ 379,586.55 | $ 1,299,560.00 | $ 919,973.45 | |
| 1493 Neils Eddy Rd, Riegelwood, NC 28456 - PID: 29803 - 3.39 ac | | $ - | $ 47,460.00 | $ 47,460.00 | |
| **Total Real Property** | | | **$ 1,656,840.00** | **$ 1,277,253.45** | **$ -** |
| | | | | | |
| **Personal Property:** | | | | | |
| Wells Fargo Business DIP Account (ending in 0252) | | | $ 1,000.00 | $ 1,000.00 | |
| Prepayments - Evanston Ins. Co. - Comm. Gen. Liability Policy # 8342 | | | $ 1,359.60 | $ 1,359.60 | 50% interest |
| Prepayments - Covington Spec. Ins. Co. - Comm. Prop. Policy # 15 00 | | | $ 2,107.00 | $ 2,107.00 | |
| | | | | | |
| Prepayments - U.S. Liability Ins. Co. - Excess Liability Policy # 454H | | | $ 450.00 | $ 450.00 | 50% interest |
| Dry projects plant equipment | | | $ 10,000.00 | $ 10,000.00 | |
| Patent #5507951, hexamine waste water treatment process | | | $ - | $ - | |
| Notes receivable - Entegris, Inc. | | | $ 1,727,188.00 | $ 1,727,188.00 | |
| **Total personal property:** | | | **$ 1,742,104.60** | **$ 1,742,104.60** | |
| **Total personal property to be auctioned or sold:** | | | **$ 10,000.00** | | |
| **Total real or personal property to be auctioned or sold:** | | | **$ 1,666,840.00** | | |

**Less**

Chapter 7 Auctioner Fees Real Property

| | | |
|---|---|---|
| 10% of first $25,000.00 | $ | (2,500.00) |
| 4% of balance | $ | (65,273.60) |

Chapter 7 Auctioner Fees - Personal Prop.

| | | |
|---|---|---|
| 20% of first $20,000 | $ | (4,000.00) |
| 10% of next $50,000 | $ | (5,000.00) |
| 4% of Balance | $ | 2,400.00 |

Trustee's Commission

| | | |
|---|---|---|
| 25% of first $5,000 | $ | (1,250.00) |
| 10% of next $5,000 to $50,000 | $ | (4,500.00) |
| 5% of the next $50,000 to $1,000,000.00 | $ | (47,500.00) |
| 3% of the balance | $ | (19,840.20) |

| | | |
|---|---|---|
| Chapter 11 Administrative Claims (est.) | $ | (45,000.00) |
| Priority Claims | $ | (1,356.75) |
| **Available for General Unsecured Creditors** | **$** | **2,825,537.50** |