UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

IN RE:                                                                 CASE NO. 23-03351-5-JNC

OAK-BARK CORPORATION

DEBTOR(S)                                              CHAPTER 11

**MOTION TO DISMISS CASE PURSUANT TO 11 U.S.C. § 1112(b)**

      **NOW COMES** the Bankruptcy Administrator for the Eastern District of North Carolina ("BA"), by and through undersigned counsel, who hereby moves the Court for an order dismissing the bankruptcy case of Oak-Bark Corporation ("Debtor") pursuant to 11 U.S.C. § 1112(b) or, in the alternative, abstain pursuant to 11 U.S.C. § 305. The BA supports the motion in the following:

**Background Facts:**

      1.     The Debtor is a North Carolina Limited Liability Company. The Debtor was incorporated on October 13, 2004, and subsequently purchased real property assets of Wright Chemical.

      2.     In 2010, the Environmental Protection Agency ("EPA") issued a CERCLA information request to the Debtor. From that request, the EPA ultimately filed a Complaint in the Eastern District of North Carolina, case number 7:23-cv-01150-FL, against the Debtor on August 11, 2023 ("CERCLA Action").

      3.     The Complaint seeks Recovery of Costs from the Debtor and other potential responsible parties. The Complaint alleges environmental violations and clean-up costs that will likely cost multiple millions of dollars. The Debtor estimates the clean-up costs to be approximately five million dollars, while the EPA's estimates are closer to twelve million dollars.

4. On November 17, 2023, the Debtor filed for bankruptcy relief under Chapter 11 Subchapter V of the bankruptcy code.

5. Ciara L. Rogers was appointed the Subchapter V Trustee ("Trustee").

6. The Debtor filed its Voluntary Petition, Schedules, and Statements [D.E. # 1] (collectively "Schedules") on November 17, 2023.

7. The Schedules list the Debtor's main assets as five (5) parcels of real property (collectively "Real Property") and an accounts receivable claim against Entegris, Inc. The accounts receivable claim has a listed value of $1,676,788.00. The Real Property includes the following:

   a. NW corner of Fertilizer Road and Neils Eddy Road – PID 89563 – 17.65 acres with a listed value of $247,100.00

   b. NW corner of Fertilizer Road and Neils Eddy Road – PID 28677 – 3.53 acres with a listed value of $49,420.00

   c. 333 Neils Eddy Road, Riegelwood, North Carolina 28456 – PID 89556 – 0.95 acres with a listed value of $13,300.00

   d. 333 Neils Eddy Road, Riegelwood, North Carolina 28456 – PID 29802 – 78.54 acres with a listed value of $1,299,560.00

   e. 1493 Neils Eddy Road, Riegelwood, North Carolina 28456 – PID 29803 – 3.39 acres with a listed value of $47,460.00.

8. On November 20, 2023, the Debtor filed within the CERCLA Action a Notice of Bankruptcy Filing and Motion to Transfer Venue to the Bankruptcy Court [District Court D.E. #s 46 and 47]. Within the Notice of Bankruptcy Filing, the Debtor asserted that the filing of the bankruptcy petition acted as a stay of the CERCLA Action. Within the Motion to Transfer Venue,

the Debtor asserted that the CERCLA Action "is a core proceeding, or, at a minimum, depends upon the outcome of core proceedings in the North Carolina Bankruptcy Court."

9. On March 15, 2024, the Debtor filed its First Plan of Reorganization [D.E. #97] ("Plan"). The Plan mainly contemplates the Debtor transferring the Real Property to the United States in full satisfaction of the Governmental Claims. Upon recording the deeds, the Plan required the United States to dismiss the outstanding District Court lawsuit against the Debtor.

10. On April 4, 2024, the District Court denied the Debtor's Motion to Transfer Venue to the Bankruptcy Court. In denying the Debtor's Motion, the District Court made the following findings germane to the bankruptcy proceeding:

- "in this case, where the only claim asserted by plaintiff against defendant Oak-Bark is a claim for cost recovery and declaratory judgment under CERCLA, that claim falls under the "police and regulatory power" exception to the automatic stay. 11 U.S.C. § 362(b)(4). **The automatic stay thus has no impact on plaintiff's continuation of its CERCLA claim up to the point of a judgment against defendant Oak-Bark**." (**emphasis added**).

- "the sole claim against defendant Oak-Bark in the instant case, arising under CERCLA, does not fall within any of the categories of "[c]ore proceedings" under the Bankruptcy Code. 28 U.S.C. § 157(b)(1). Nor is it "related to" the bankruptcy case, such that referral of the claim to bankruptcy court is appropriate. Id. § 157(a)."

- "due to the nature of the CERCLA claim, even if proceedings commence in the bankruptcy court, a withdrawal of the reference for trial and judgement would be necessary."

[District Court D.E. # 69 pp. 9-11].

11. An Order Requiring Mediated Settlement Conference [D.E. #137] was entered on May 14, 2024. On August 6th and 7th the following parties participated in the mediation: the Debtor; William E. Oakley, Jr. and James C. Barker; Environmental Protection Agency and the United States Department of Justice; Hexion, Inc.; Entegris, Inc.; Koch Sulfur Products, LLC; Cronly Bluffs, LLC; and, Eleanor W. Linderman and Elizabeth W. McMillen, individually and in their capacity as co-trustees of the Elizabeth L. Wright Revocable Trust U/A DTD 1/15/2002 ("Mediated Parties").

12. On August 12, 2024, the Mediator, Robert Olian, filed a Report of Mediator ("Report") [D.E. # 151]. The Report detailed that the Mediated Parties had not reached a settlement, however, settlement discission were to resume within two days. The Report details that settlement between the Mediated Parties was "quite possible".

13. The Mediated Parties ultimately did not reach a settlement and the Debtor filed an Amended Plan of Liquidation ("Amended Plan") [D.E. # 177] on October 29, 2024.

14. The Amended Plan generally outlines the establishment of a "Remediation Trust" from which the Debtor's creditors will be paid.

15. The Amended Plan also includes the following provision:

> "Upon entry of the Confirmation Order, all Enjoined Parties are and shall be permanently enjoined on and after the Effective Date, from taking any actions to interfere with the implementation or consummation of the Plan. Enjoined Parties must first seek approval of the Bankruptcy Court before they may commence an action against the Protected Parties. Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all Enjoined Parties are and shall be permanently enjoined,

on and after the Effective Date, with respect to any Claims and Equity Interests, from directly or indirectly (i) commencing, conducting, or continuing in any manner any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtor, Protected Parties, or the property of the Debtor, (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering, enforcing, or attempting to recover or enforce, by any manner or means, any judgment, award, decree, or order against the Debtor, Protected Parties, or the property of the Debtor, (iii) creating, perfecting, or otherwise enforcing in any manner, any security interest, lien or encumbrance of any kind against the Debtor, Protected Parties, or the property of the Debtor, (iv) asserting any right of setoff, directly or indirectly, against any obligation due to the Debtor or against property or interests in property of the Debtor, except to the limited extent permitted under §§ 553 and 1141 of the Bankruptcy Code, and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan."

16. Enjoined Parties is a defined term within the Amended Plan. Enjoined Parties has the following definition:

" (i) all Entities who have held, hold, or may hold Claims against or Equity Interests in the Debtor (whether or not proof of such Claims or Equity Interests has been filed and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed

to have rejected the Plan), (ii) (ii) any Entity that has appeared and/or filed any motion, objection, or other pleading in this Chapter 11 Case regardless of the capacity in which such Entity appeared and any other party in interest, (iii) any Related Entity, and (iv) the predecessors, successors, assigns (whether by operation of law or otherwise), and each of their respective present, future, or former officers, directors, employees, managers, managing members, members, financial advisors, attorneys, accountants, investment bankers, consultants, professionals, advisors, shareholders, principals, partners, subsidiaries, divisions, management companies, heirs, agents, and other representatives of each of the foregoing, including the United States of America and Environmental Protection Agency."

17. Protected Parties is a defined term within the Amended Plan. Protected Parties has the following definition:

　　a. employees, managers, managing members, members, financial advisors, attorneys, accountants, investment bankers, consultants, professionals, advisors, shareholders, principals, partners, subsidiaries, divisions, management companies, heirs, agents, and other representatives of each of the foregoing, including the United States of America and Environmental Protection Agency.

18. During the pendency of the bankruptcy case, the Debtor has relied solely on cash infusions from Cronly Bluffs, LLC ("Cronly"), a related entity, to pay its on-going operating expenses and administrative expenses.

**Analysis:**

**A. Inability to Present or Propose a Confirmable Chapter 11 Plan**

19. Pursuant to 11 U.S.C. § 1112(b) of the Bankruptcy Code, "on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall ... dismiss a case under this chapter, ... if the movant establishes cause." "Cause" for dismissal or conversion under 11 U.S.C. § 1112(b)(4) may also be for grounds not included within the enumerated list. *In re Ameribuild Constr. Mgmt.*, 399 B.R. 129, 131-32 (Bankr. S.D.N.Y. 2009). Instead, 11 U.S.C. § 1112(b)(4) sets forth a non-exhaustive list of circumstances constituting cause and allows the court to develop a list of additional grounds. *Pioneer Liquidating Corp. v. United States Tr. (In re Consol. Pioneer Mortg. Entities)*, 248 B.R. 368, 375 (9th Cir. BAP 2000).

20. Courts have routinely found cause to include a debtor's inability to propose a plan of reorganization or liquidation within a reasonable amount of time. *See In re eFusion Servs., LLC*, No. 13-30740 MER, 2014 Bankr. LEXIS 4412 (Bankr. D. Colo. Oct. 16, 2014) ("Although eFusion may eventually achieve success in the state court litigation and possess the ability to propose a Chapter 11 plan, there is no evidence as to when such a plan could be expected, nor as to the provisions such a plan would contain . . . therefore, eFusion's assertions as to reorganization . . . are purely speculative at this time."); *See also In re Smith*, 357 B.R. 60, 71 (Bankr. M.D.N.C. 2006) (finding that dismissal of the case was warranted under 11 U.S.C. § 1112 because debtors' cases were pending for at least two and one half year without confirmation of a plan, and the likelihood of confirming a plan had diminished rather than improved.)

21. Presently, the Debtor's case has been pending for approximately one year. The

Debtor has now proposed both the Plan and the Amended Plan. While neither the Plan nor Amended Plan have been presented at a confirmation hearing, the record reflects that neither plan is confirmable.

22. The Plan relies on a "dirt for debt" scheme in which the Debtor will relinquish Real Property to the United States in satisfaction of the outstanding CERCLA claims. It is the BA's understanding that the United States is unable to accept Real Property in satisfaction of CERCLA claims. Therefore, the Plan was not confirmable.

23. The Amended Plan not only relies on a "dirt for debt" scheme in relation to the United States, but also incorporates a permanent gatekeeping injunction for all Enjoined Parties, protecting the "Protected Parties" a group of individuals and entities that extends far beyond the Debtor. However, "For asbestos-related bankruptcies—and only for such bankruptcies—Congress has provided that, "[n]otwithstanding" the usual rule that a debtor's discharge does not affect the liabilities of others on that same debt, §524(e), courts may issue "an **injunction** . . . bar[ring] any action directed against a third party" under certain statutorily specified circumstances. §524(g)(4)(A)(ii). That the code *does* authorize courts to enjoin claims against third parties without their consent, but does so in only *one* context, makes it all the more unlikely that §1123(b)(6) is best read to afford courts that same authority in *every* context. *Harrington v. Purdue Pharma L.P.*, 219 L. Ed. 2d 721, 736-737, 2024 U.S. LEXIS 2848, *26-27, 144 S. Ct. 2071, 73 Bankr. Ct. Dec. 15.

24. The Debtor's case is not an asbestos related bankruptcy. As such, the gatekeeper injunction proposed within the Amended Plan is not permissible under the Code. While the Debtor does not use the term 'channeling injunction,' 'release,' or 'discharge' within the Amended Plan – "word games cannot obscure the underlying reality" the Debtor and "Protected

Parties" "seek greater relief than a bankruptcy discharge normally affords" and "they seek to do so without putting anything close to all their assets on the table." *Id.* at 737. As proposed, the Amended Plan cannot be confirmed.

25. It is apparent that the only potential confirmable plan the Debtor can propose relies solely on the outcome of the CERCLA Action, which is currently pending. Since mediation has failed, there is no indication of when the underlying District Court case will be resolved. Therefore, the Debtor is unable to present a plan which can be confirmable until the CERCLA Action is litigated.

26. Based on the Debtor's inability to propose a confirmable plan within a reasonable timeframe the Debtor's case should be dismissed.

**B. This case should be dismissed based on bad faith under 11 U.S.C. § 1112(b).**

27. This case "demonstrate[s], unfortunately, how the good and useful ends of the bankruptcy process can be badly abused." In re Premier Auto. Servs., Inc., 492 F.3d 274, 277 (4th Cir. 2007) (affirming bankruptcy court's finding that the filing was not in good faith as one of factual findings subject to the clearly erroneous standard). "The right to file a Chapter 11 bankruptcy petition is conditioned upon the debtor's good faith — the absence of which is cause for summary dismissal." *In re Premier Auto. Servs., Inc.*, 492 F.3d 274, 279; *Carolin v. Miller*, 886 F.2d 693, 698 (4th Cir.1989; *Mich. Nat'l Bank v. Charfoos (In re Charfoos),* 979 F.2d 390, 392 (6th Cir.1992). As the Fourth Circuit has explained:

> Indeed, the ability of a bankruptcy court to conduct a threshold inquiry into the good faith of a petitioner is "indispensable to proper accomplishment of the basic purposes of Chapter 11 protection." *Carolin,* 886 F.2d at 698. As this court has explained, "a good faith requirement 'prevents abuse of the bankruptcy process by debtors whose overriding motive

is to delay creditors without benefitting them in any way or to achieve reprehensible purposes.'" *Id.* (quoting *In re Little Creek Dev. Co.,* 779 F.2d 1068, 1072 (5th Cir.1986)). The good faith standard also "'protects the jurisdictional integrity of the bankruptcy courts by rendering their powerful equitable weapons (i.e., avoidance of liens, discharge of debts, marshaling and turnover of assets) available only to those debtors and creditors with clean hands.'" *Id.* (quoting *In re Little Creek Dev. Co.,* 779 F.2d at 1072).

*In re Premier Auto. Servs., Inc.*, 492 F.3d at 279.1

28. "In this circuit, a lack of good faith in filing a Chapter 11 petition requires a showing of 'objective futility' and 'subjective bad faith.'" *In re Premier Auto. Servs., Inc.*, 492 F.3d at 279–80. "The objective test focuses on whether 'there exists the 'realistic possibility of a reorganization.'" *In re Premier Auto. Servs., Inc.*, 492 F.3d at 280 (quoting *Carolin*, 886 F.2d 698). "The subjective test asks whether a Chapter 11 petition is motivated by an honest intent to effectuate reorganization or is instead motivated by some improper purpose." *In re Premier Auto. Servs., Inc.*, 492 F.3d at 280.

29. Courts have found cause for dismissal based on bad faith when the jurisdictional integrity of the process is called into question. *See In re Century City, Inc.*, 8 B.R. 25 (Bankr. D.N.J. 1980) ("The power of the Court to dismiss a case when its jurisdiction has been improperly invoked is inherent in the bankruptcy court as a court of equity, guided by equitable doctrines and principles" quoting *SEC v. United States Realty & Improvement Co.,* 310 U.S. 434, 435, 60 S. Ct. 1044, 1046, 84 L. Ed. 1293 (1941); *See also In re Schlangen*, 91 B.R. 834 (Bankr. N.D. Ill. 1988) (finding that the debtor's purpose in filing the petition was to preserve federal jurisdiction over a case that would otherwise be in the state court.")

30. The Debtor's Amended Plan appears to be an end-run around the District Court's

April 4, 2024 Order Denying the Debtor's Motion to Transfer Venue of the CERCLA Action to the Bankruptcy Court [District Court D.E. # 69]. Despite the District Court specifically finding that the matter could not be transferred to the Bankruptcy Court, the Amended Plan, if confirmed, would provide the Bankruptcy Court with gatekeeping authority over the parties to that proceeding.

31. The Amended Plan is another attempt to change the venue of the CERCLA Action to the Bankruptcy Court, despite the District Court's Order Denying the Debtor's initial request. The District Court has already determined this matter. Further, the Debtor should be prepared to provide legal support for the proposition that the Bankruptcy Court has the authority to enjoin filings in a pending District Court proceeding where the District Court has determined the automatic stay does not apply and has expressly retained jurisdiction over that matter. As a result, the Amended Plan cannot be confirmed and the case should be dismissed.

**C.  The Court should Abstain Pursuant to 11 U.S.C. § 305(a)(1)**

32. Abstention under 11 U.S.C. § 305(a)(1) is permitted only if the interest of creditors and the debtor would be better served by dismissal of a case or suspension of all proceedings.

33. Given the District Court's retention of jurisdiction over the CERCLA Action and the dependency of the disposition of this bankruptcy on the conclusion of that proceeding, the BA believes substantially all, if not all parties, would be better served if the bankruptcy proceeding was dismissed.

**WHEREFORE,** the Bankruptcy Administrator respectfully requests that the Court dismiss the Debtor's case without prejudice pursuant to 11 U.S.C. § 1112(b) or, in the alternative, abstain pursuant to 11 U.S.C. § 305; and, grant such other relief that this Court may deem just

and equitable.

        Respectfully submitted, this 15th day of November, 2024.

                By: /s/<u>Brian C. Behr</u>
                Brian C. Behr
                Bankruptcy Administrator
                NC Bar No. 36616
                By: /s/ <u>Kirstin E. Gardner</u>
                State Bar No. 52144
                Staff Attorney
                U.S. Bankruptcy Administrator's
                Office 434 Fayetteville Street, Suite 640 Raleigh, North Carolina 27601
                (919) 856-4886
                Brian_behr@nceba.uscourts.gov
                kirstin_gardner@nceba.uscourts.gov

## CERTIFICATE OF SERVICE

I, Rick P. Hinson, of 434 Fayetteville Street, Suite 640, Raleigh, North Carolina, 27601, certify:

That I am, and at all times hereinafter mentioned was more than eighteen (18) years of age;

That on 15th day of November, 2024, I served copies of the foregoing document on the following:

| | |
|---|---|
| Oak-Bark Corporation<br>Attn: Managing Agent<br>514 Wayne Drive<br>Wilmington, NC 28403 | *(Via Regular U.S. Mail)* |
| George M. Oliver<br>Attorney for Debtor | *(Via CM/ECF)* |
| Ciara L. Rogers<br>Subchapter V Trustee | *(Via CM/ECF)* |
| James S. Livermon, III<br>Attorney for Hexion, Inc. | *(Via CM/ECF)* |
| Stephanie Goodbar<br>Alison Bauer<br>Attorneys for Entegris, Inc. | *(Via CM/ECF)* |
| John M. Moye<br>Molly Nash Sigler<br>Attorneys for Koch Sulfur Products, LLC | *(Via CM/ECF)* |
| Karl Fingerhood<br>DOJ - ENRD<br>Attorney for the United States (EPA) | *(Via CM/ECF)* |

I certify under penalty of perjury that the foregoing is true and correct.

Dated this 15th day of November, 2024.

By: /s/ Rick P. Hinson
Rick P. Hinson
Operations Supervisor
Bankruptcy Administrator's Office
434 Fayetteville Street, Suite 640
Raleigh, NC 27601
(919) 856-4886