# ENVIRONMENTAL REMEDIATION AND ESCROW AGREEMENT

THIS ENVIRONMENTAL REMEDIATION AND ESCROW AGREEMENT (this "**Agreement**"), dated effective as of [_____], 2024 (the "**Effective Date**"), is by and among Cronly Bluffs LLC, a North Carolina limited liability company ("**Cronly**"), Oak-Bark Corporation, a North Carolina corporation ("**Oak-Bark**" and together with Cronly, the "**Transferors**"), and [_____], as escrow agent hereunder ("**Escrow Agent**").

In consideration of the mutual covenants and provisions contained herein and other good and valuable consideration, Cronly, Oak-Bark, and Escrow Agent agree as follows:

## SECTION 1
## RECITALS

1.1    On July 10, 2023, the United States of America ("**Plaintiff**") commenced an action (together with any related actions, complaints, demands, claims, causes of action, arbitrations, audits, litigation, subpoenas, summons, assessments, suits, investigations, proceedings or judgments, the "**Legal Proceedings**") against Cronly and Oak-Bark under Section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("**CERCLA**") for recovery of cleanup costs at 333 Neils Eddy Road, Riegelwood, Columbus County, North Carolina and more particularly described in attached <u>Exhibit A</u> (the "**Property**"). The claim has not been proven, and Plaintiff has not obtained a judgment for any CERCLA liability.

1.2    The Property allegedly contains hazardous substances primarily located in two different areas: one area is based on a single, one-time act in 1963 when a defunct sulfuric acid chamber was knocked over into a four-acre swamp by persons who long preceded any parties in the subject actions. The second area, a one-acre tract, allegedly contains hazardous substances left from phosphate fertilizer manufacturing between 1883 and the 1980s. The Property has been owned, leased, and operated by various parties since the two sulfuric acid manufacturing plants began operation.  For purposes of this Agreement, "**Environmental Conditions**" shall mean the alleged conditions of the Property described in this section.

1.3    In connection with the Legal Proceedings and the Environmental Conditions, each of Cronly and Oak-Bark has determined it is in its best interest to fund an escrow account to cover remediation and litigation costs up to an aggregate amount of Three Million Two Hundred and 00/100 Dollars ($3,200,000), as more particularly described in this Agreement.

1.4    The Transferors acknowledge that (i) Escrow Agent is not a party to any claim with respect to the Property, and (ii) Escrow Agent shall have no implied duties beyond the express duties set forth in this Agreement.

## SECTION 2
## THE REMEDIATION AGREEMENT

2.1    Without prejudice to the Transferors' respective remedies against third parties, all of which rights and remedies are hereby reserved, the Transferors shall fund an escrow account as described in Section 3.1 below, which funds will be used to pay the costs of:

(A) The Remediation (as defined below) of (i) any material, substance, chemical, waste, product, derivative, compound, mixture, solid, liquid, mineral or gas, in each case, whether naturally occurring or manmade, that is hazardous, acutely hazardous, toxic, or words of similar import or regulatory effect under Environmental Laws (as defined below); and (ii) any petroleum or petroleum-derived products, radon, radioactive materials or wastes, asbestos in any form, lead or lead-containing materials, urea formaldehyde foam insulation and polychlorinated biphenyls (collectively, "**Hazardous Materials**") that are identified during the performance of the Remediation (collectively, the "**Existing Hazardous Materials**") to meet industrial or commercial use standards as set forth in applicable Environmental Law (as defined below) (the "**Applicable Standards**");

(B) Monitoring such Remediation for the period of time required by the Applicable Standards in order to obtain a FCOR (as defined below);

(C) If applicable, fees incurred in pursuit of a Grant (as defined below);

(D) The upkeep of the Property and any fees and costs incurred to sell any Property (including but not limited to brokerage fees); and

(E) Fees and other costs incurred by Transferors and their respective Representatives (as defined below) arising from or related to the Legal Proceedings and Remediation of the Property.

2.2     The Escrow Agent shall take all reasonably necessary and appropriate action under the applicable Environmental Laws as set forth in Section 2.1 above.

2.3     The scope of the remediation for the Existing Hazardous Materials (the "**Remediation**") shall include all environmental investigatory and corrective measures at or about the Property that are necessary: (1) to obtain a Final Close Out Report from EPA with respect to the Property pursuant to applicable Environmental Laws (the "**FCOR**"), in accordance with Section 2.1 above; (2) to comply with all applicable Environmental Laws to the extent necessary to obtain and comply with the FCOR; and (3) with respect to the Existing Hazardous Materials, to respond to an imminent threat of release or an emergency as defined by EPA, NCDEQ, or other applicable regulatory agencies (the "**Agencies**") at the Property during Remediation or post-Remediation activities as required by the Agencies to obtain and comply with the FCOR. The Transferors further agree that if such Remediation involves off-site disposal of Existing Hazardous Materials, manifests for such disposal shall name Oak-Bark as the generator with respect to all such materials. The Transferors shall use good faith efforts to select, design and implement the most cost-effective remedy that is approved by the Agencies pursuant to the applicable Environmental Laws; provided, however, that the Transferors shall not be required by this provision to select or implement any remedy that consists substantially of engineering controls unreasonably restricting the present or future configuration of the buildings at the Property for commercial or industrial use, or a "no action" remedy. All Remediation work shall be performed in a cost effective manner.

2.4     Except as otherwise set forth herein, the Escrow Funds (as defined below) shall be held until such time as a FCOR is issued with respect to the Property and all post-Remediation monitoring is complete. At such time, Escrow Agent will release any remaining Escrow Funds to Cronly or Oak-Bark, as applicable, or in the case of cash or other proceeds attributable to the Escrow Funds deposited by each Transferor, if any, pro rata to the respective owners of the Transferor that deposited such Escrow Funds based on the percentage interest of each owner in such Transferor, in each case as more particularly described in Section 4.1.

2.5     The Escrow Agent shall have authority to engage a consultant to aid its decisions with respect to the remediation work (collectively, the "**Consultant**"). Transferor has the right at any time, and for any reason, to request to replace Consultant with a different environmental consultant, and upon such request the Transferors shall cooperate in good faith to name a successor environmental consultant.

2.6     The Transferors shall cooperate in any attempts by either of them to obtain any outside funding from any governmental agency (including without limitation utilizing the assistance of Consultant), such as a State of North Carolina grant, for the Remediation (a "**Grant**"). Fees incurred pursuing a Grant shall be reimbursed from the Escrow Fund. In the event any such funding is obtained, the amount of such funds shall be used for the Remediation prior to the funds that are in the Escrow Fund (or if for reimbursement of funds already spent, such grant funds shall be added to the Escrow Fund).

2.7     Notwithstanding any other provisions in this Agreement, each of Cronly and Oak-Bark agrees that the Escrow Fund shall not be used to fund either Transferor's compliance with Environmental Laws unrelated to Remediation of Existing Hazardous Materials (including any general obligation that either Transferor shall comply with Environmental Laws, if such compliance does not relate to Remediation of Existing Hazardous Materials).

SECTION 3
THE ESCROW FUND

3.1     General.  Transferors shall transfer the following property (such property together with any interest and other income thereon, and proceeds and products therefrom, the "**Escrow Funds**") to Escrow Agent on the Effective Date:

   (A)   Cronly shall transfer (collectively, the "**Cronly Property**"):

      (i)    cash;

      (ii)   certain real property located in Columbus County, North Carolina; and

      (iii)  all of Cronly's rights and remedies in, to, and under certain claims, actions, complaints, demands, causes of action, arbitration, audits, litigation, subpoenas, summons, collections, assessments, suits, investigations, proceedings or judgments (collectively, "**Litigation Claims**");

4871-0803-3022.v1

  (B) Oak-Bark shall transfer (collectively, the "**Oak-Bark Property**"):

   (i) cash;

   (ii) certain real property located in Columbus County, North Carolina;

   (iii) all of Oak-Bark's rights and remedies in, to, and under certain Litigation Claims;

   (iv) certain equipment; and

   (v) all of Oak-Bark's rights in, to, and under the proceeds of certain promissory notes and other similar debt securities.

Escrow Agent will acknowledge receipt of the Escrow Funds upon receipt.

 3.2 <u>Cap on Remediation Costs</u>. Except as set forth in Section 3.1, the Transferors shall have no obligation to contribute any additional property into the Escrow Fund with respect to the costs of Remediation at or about the Property. Notwithstanding anything contained in this Agreement to the contrary, the payments from the Escrow Funds under this Agreement for costs incurred by the Transferors for Remediation and related to the Legal Proceedings, in the aggregate, shall not exceed Three Million Two Hundred and 00/100 Dollars ($3,200,000).

 3.3 <u>Definitions</u>. The following terms shall have the following meanings when used herein:

"**Business Day**" means any day, other than a Saturday, Sunday or legal holiday, on which Escrow Agent at its location identified in Section 8 is open to the public for general business purposes.

"**Cronly Representative**" means the person(s) so designated on <u>Schedule 2</u> hereto or any other person designated in a writing signed by Cronly and delivered to Escrow Agent and an Oak-Bark Representative in accordance with the notice provisions of this Agreement, to act as Cronly's representative under this Agreement.

"**Environmental Law**" means any applicable Law, and any Governmental Order or binding agreement with any Governmental Authority: (a) relating to pollution (or the cleanup thereof) or the protection of natural resources, endangered or threatened species, human health or safety, or the environment (including ambient or indoor air, soil, surface water or groundwater, or subsurface strata); or (b) concerning the presence of, exposure to, or the management, manufacture, use, containment, storage, recycling, reclamation, reuse, treatment, generation, discharge, transportation, processing, production, disposal or remediation of any Hazardous Materials. The term "Environmental Law" includes, without limitation, the following (including their implementing regulations and any state analogs): the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended by the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C. §§ 9601 et seq.; the Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act of 1976, as amended by the Hazardous and Solid

Waste Amendments of 1984, 42 U.S.C. §§ 6901 et seq.; the Federal Water Pollution Control Act of 1972, as amended by the Clean Water Act of 1977, 33 U.S.C. §§ 1251 et seq.; the Toxic Substances Control Act of 1976, as amended, 15 U.S.C. §§ 2601 et seq.; the Emergency Planning and Community Right-to-Know Act of 1986, 42 U.S.C. §§ 11001 et seq.; the Clean Air Act of 1966, as amended by the Clean Air Act Amendments of 1990, 42 U.S.C. §§ 7401 et seq.; the Federal Insecticide, Fungicide and Rodenticide Act of 1910, as amended, 7 U.S.C. §§ 136 et seq.; the Oil Pollution Act of 1990, as amended, 33 U.S.C. §§ 2701 et seq.; and the Occupational Safety and Health Act of 1970, as amended, 29 U.S.C. §§ 651 et seq.

"**Escrow Funds**" means the cash, real property, equipment, debt instruments, rights and other assets transferred to the Escrow Agent pursuant to Section 3.1 of this Agreement, together with any interest and other income thereon, and proceeds and products therefrom.

"**Final Order**" means a final and nonappealable order of a court of competent jurisdiction (an "**Order**"), which Order is delivered to Escrow Agent accompanied by a written instruction from Cronly or Oak-Bark given to effectuate such Order and confirming that such Order is final, nonappealable and issued by a court of competent jurisdiction, and Escrow Agent shall be entitled to conclusively rely upon any such confirmation and instruction and shall have no responsibility to review the Order to which such confirmation and instruction refers.

"**Governmental Authority**" means any federal, state, local or foreign government or political subdivision thereof, or any agency or instrumentality of such government or political subdivision, or any self-regulated organization or other non-governmental regulatory authority or quasi-governmental authority (to the extent that the rules, regulations or orders of such organization or authority have the force of Law), or any arbitrator, court or tribunal of competent jurisdiction.

"**Governmental Order**" means any order, writ, judgment, injunction, decree, stipulation, determination or award entered by or with any Governmental Authority.

"**Indemnified Party**" has the meaning set forth in Section 5.2.

"**Joint Written Direction**" means a written direction executed by a Cronly Representative and an Oak-Bark Representative, delivered to Escrow Agent in accordance with Section 4 and directing Escrow Agent to disburse all or a portion of the Escrow Funds to Cronly or Oak-Bark, as appropriate.

"**Law**" means any statute, law, ordinance, regulation, rule, code, order, constitution, treaty, common law, judgment, decree, other requirement or rule of law of any Governmental Authority.

"**Oak-Bark Representative**" means the person(s) so designated on <u>Schedule 2</u> hereto or any other person designated in a writing signed by Oak-Bark and delivered to Escrow Agent and a Cronly Representative in accordance with the notice provisions of this Agreement, to act as Oak-Bark's representative under this Agreement.

"**Representatives**" means, with respect to each Transferor, all directors, officers, stockholders, members, employees, consultants, financial advisors, counsel, accountants and other agents of such Transferor.

4871-0803-3022.v1

3.4     <u>Powers of Escrow Agent</u>. In the absence of specific written direction to the contrary at any time from either Transferor, Escrow Agent is hereby authorized, in its sole and absolute discretion, to hold, manage, sell, exchange, invest, and reinvest the Escrow Funds, collect all income, and make payments from the Escrow Funds pursuant to Section 4.1. For the avoidance of doubt, Escrow Agent may sell, transfer, exchange, convert or otherwise dispose of all or any portion of the Escrow Funds, at public or private sale, with or without security, in such manner at such time or times, for such prices and upon such terms and conditions as Escrow Agent may deem advisable.

3.5     <u>Investments</u>. In addition to and in no way limiting the powers granted to Escrow Agent in Section 3.4:

(A)     The Transferors warrant that no investment or reinvestment direction will be given except in the following: (a) direct obligations of the United States of America or obligations the principal of and the interest on which are unconditionally guaranteed by the United States of America; (b) U.S. dollar denominated deposit accounts and certificates of deposit issued by any bank, bank and trust company, or national banking association (including Escrow Agent and its affiliates), which are either (i) insured by the Federal Deposit Insurance Corporation ("**FDIC**") up to FDIC limits, or (ii) with domestic commercial banks which have a rating on their short-term certificates of deposit on the date of purchase of at least "A-1" by S&P or "P-1" by Moody's (ratings on holding companies are not considered as the rating of the bank); or (c) money market funds; provided further, however, that Escrow Agent will not be directed to invest in investments that Escrow Agent determines are not consistent with Escrow Agent's policies or practices. To the extent applicable regulations grant rights to receive brokerage confirmations for certain security transactions, Cronly and Oak-Bark waive receipt of such confirmations.

(B)     All investments will be made in the name of Escrow Agent. Escrow Agent may, without notice to Cronly and Oak-Bark, sell or liquidate any of the foregoing investments at any time for any disbursement of Escrow Funds permitted or required hereunder and will not be liable for any loss, cost or penalty resulting from any sale or liquidation of any such investment. All investment earnings will become part of the Escrow Funds and investment losses will be charged against the Escrow Funds.

(C)     With respect to any Escrow Funds or investment instruction received by Escrow Agent after 11:00 a.m., U.S. Central Time, Escrow Agent will not be required to invest applicable funds until the next Business Day. Receipt of the Escrow Funds and investment and reinvestment of the Escrow Funds will be confirmed by Escrow Agent by an account statement. Failure to inform Escrow Agent in writing of any error or omission in any such account statement within 90 days after receipt will conclusively be deemed confirmation and approval by the Transferors of such account statement.

SECTION 4
PAYMENTS FROM THE ESCROW FUND

4871-0803-3022.v1

4.1 <u>Payments – Generally</u>.  When any of 4.1(A), 4.1(B), 4.1(C) or 4.1(D) have occurred, the Escrow Agent will pay to Cronly or Oak-Bark, as the case may be, from the Escrow Funds to the extent the Escrow Funds are sufficient:

(A) <u>Discretionary Payments</u>. Except as otherwise set forth in this Section 4, Escrow Agent shall make payments to Cronly or Oak-Bark, as applicable, in Escrow Agent's sole discretion for costs incurred by either Transferor related directly to any of the following:

i. Actual costs incurred by such Transferor to perform investigation, Remediation, monitoring, and post-Remediation work;

ii. All other fees and costs incurred by such Transferor related to the Remediation of the Existing Hazardous Materials;

iii. Fees and other costs, including without limitation indemnification claims and reasonable attorneys' fees, incurred by such Transferor or its Representatives related to the Legal Proceedings and Remediation of the Property; and

iv. Costs otherwise set forth in Section 2.1.

(B) <u>Upon Receipt of Joint Written Direction</u>.  When Escrow Agent receives a Joint Written Direction substantially in the form of <u>Schedule 3</u> hereto and received by Escrow Agent as set forth in Section 8, Escrow Agent will pay to Oak-Bark and/or Cronly, as applicable, from the Escrow Fund the amount of such Joint Written Direction. Such Joint Written Direction must contain complete payment instructions, including funds transfer instructions or an address to which a check should be sent.

(C) <u>Upon Receipt of Arbitration Award or Final Order</u>.  Delivery to the Escrow Agent of Final Order directing the payment of an amount from the Escrow Fund, Escrow Agent will pay to Oak-Bark and/or Cronly from the Escrow Fund the amount of arbitration award or Final Order as set forth therein.

(D) <u>Excess Escrow Funds</u>. Notwithstanding anything contained in this Agreement to the contrary, upon the payment of an aggregate amount of Three Million Two Hundred and 00/100 Dollars ($3,200,000) (the "**Remediation Cap**") by Escrow Agent from the Escrow Funds pursuant to this Agreement:

i. All excess cash, proceeds, interest and other income, whether then held in the Escrow Funds or accrued after the Remediation Cap has been reached, shall be paid by Escrow Agent to the respective owners of each Transferor pursuant to Section 4.4, such amounts to be paid pro rata based on the percentage interest held by each owner in such Transferor;

ii. All remaining real property transferred by or attributable to Cronly shall be promptly transferred by Escrow Agent to Cronly;

4871-0803-3022.v1

        iii.      The real property transferred or attributable to Oak-Bark shall be held by Escrow Agent in the Escrow Funds until such time as the issuance of a FCOR from the Agencies with respect to the Property; and

        iv.      All other Cronly Property and Oak-Bark Property not listed above, including any interest and other income thereon, proceeds and products therefrom, and rights thereto, shall be promptly transferred by Escrow Agent to Cronly or Oak-Bark, as applicable.

4.2    All notices delivered pursuant to this Agreement shall be delivered to Cronly, Oak-Bark, and Escrow Agent in accordance with Section 8 of this Agreement.

4.3    Any payments from the Escrow Fund shall be paid by Escrow Agent within ten (10) Business Days of receipt of a Joint Written Direction, arbitration award or Final Order, received pursuant to this Section 4 and Section 8.

4.4    Prior to any disbursement, Escrow Agent must receive reasonable identifying information regarding the recipient so that Escrow Agent is able to comply with its regulatory obligations and reasonable business practices, including without limitation a completed United States Internal Revenue Service ("**IRS**") Form W-9 or Form W-8, as applicable. All disbursements of Escrow Funds will be subject to the fees and claims of Escrow Agent and the Indemnified Parties pursuant to Section 5.3.

4.5    Cronly and Oak-Bark may each deliver written notice to Escrow Agent in accordance with Section 8, changing their respective funds transfer instructions, which notice will be effective only upon receipt by Escrow Agent and after Escrow Agent has had reasonable time to act upon such notice.

4.6    Notwithstanding any other provision of this Agreement, Escrow Agent is authorized to disburse Escrow Funds pursuant to a Final Order.

SECTION 5
ESCROW AGENT

5.1    <u>Duties and Liabilities of Escrow Agent</u>.

(A)    Escrow Agent undertakes to perform only such duties as are expressly set forth herein and no duties will be implied. Such duties include, but are not limited to, the carry out of the Remediation in good faith. Such duties further include the obligation to sell Oak Bark and Cronly's property in good faith, in such transactions that Escrow Agent deems fit, to maximize the return on the escrowed assets to complete the Remediation in a reasonably practical time, as determined by Escrow Agent in its discretion and/or as obligated by timeframes set forth by the Agencies.

(B)    Escrow Agent will not be liable for any action taken or omitted by it in good faith except to the extent that a court of competent jurisdiction determines, which determination is not subject to appeal, that Escrow Agent's gross negligence or willful misconduct in connection with its material breach of this Agreement was the sole cause

of any loss to Cronly or Oak-Bark. Escrow Agent may retain and act hereunder through agents, and will not be responsible for or have any liability with respect to the acts of any such agent retained by Escrow Agent in good faith.

(C) Escrow Agent will not be responsible for delays or failures in performance resulting from acts of God, strikes, lockouts, riots, acts of war or terror, epidemics, governmental regulations, fire, communication line failures, computer viruses, attacks or intrusions, power failures, earthquakes or any other circumstance beyond its control. Escrow Agent will not be obligated to take any legal action in connection with the Escrow Funds or this Agreement or to appear in, prosecute or defend any such legal action or to take any other action that in Escrow Agent's sole judgment may expose it to potential expense or liability. Cronly and Oak-Bark are aware that under applicable state law, property which is presumed abandoned may under certain circumstances escheat to the applicable state. Escrow Agent will have no liability to Cronly or Oak-Bark, their respective heirs, legal representatives, successors and assigns, or any other party, should any or all of the Escrow Funds escheat by operation of law.

(D) Escrow Agent may consult, at Cronly's and Oak-Bark's cost, legal counsel selected by it in the event of any dispute or question as to the construction of any of the provisions hereof or of any other agreement or of its duties hereunder, or relating to any dispute involving this Agreement, and will incur no liability and must be fully indemnified from any liability whatsoever in acting in accordance with the advice of such counsel. The Transferors agree to perform or procure the performance of all further acts and things, and execute and deliver such further documents, as may be required by law or as Escrow Agent may reasonably request in connection with its duties hereunder. When any action is provided for herein to be done on or by a specified date that falls on a day other than a Business Day, such action may be performed on the following Business Day.

(E) If any portion of the Escrow Funds is at any time attached, garnished or levied upon, or otherwise subject to any writ, order, decree or process of any court, or in case disbursement of Escrow Funds is stayed or enjoined by any court order, Escrow Agent is authorized, in its sole discretion, to respond as it deems appropriate or to comply with all writs, orders, decrees or process so entered or issued, whether with or without jurisdiction; and if Escrow Agent relies upon or complies with any such writ, order, decree or process, it will not be liable to any of the parties hereto or to any other person or entity by reason of such compliance even if such order is reversed, modified, annulled, set aside or vacated.

(F) Escrow Agent and any stockholder, director, officer or employee of Escrow Agent may buy, sell and deal in any of the securities of any other party hereto and contract and lend money to any other party hereto and otherwise act as fully and freely as though it were not Escrow Agent under this Agreement. Nothing herein will preclude Escrow Agent from acting in any other capacity for any other party hereto or for any other person or entity.

5.2    <u>Indemnification of Escrow Agent</u>.  Cronly and Oak-Bark, jointly and severally, shall indemnify and hold harmless Escrow Agent and each director, officer, employee and affiliate

4871-0803-3022.v1

of Escrow Agent (each, an "**Indemnified Party**") upon demand against any and all claims, actions and proceedings (whether asserted or commenced by Cronly, Oak-Bark or any other person or entity and whether or not valid), losses, damages, liabilities, penalties, costs and expenses of any kind or nature (including without limitation reasonable attorneys' fees, costs and expenses) (collectively, "**Losses**") arising from this Agreement or Escrow Agent's actions hereunder, except to the extent such Losses are finally determined by a court of competent jurisdiction, which determination is not subject to appeal, to have been directly caused solely by the gross negligence or willful misconduct of such Indemnified Party in connection with Escrow Agent's material breach of this Agreement. Cronly and Oak-Bark further agree, jointly and severally, to indemnify each Indemnified Party for all costs, including without limitation reasonable attorneys' fees, incurred by such Indemnified Party in connection with action taken to enforce Cronly's and Oak-Bark's obligations to Escrow Agent under this Agreement.  Each Indemnified Party shall, in its sole discretion, have the right to select and employ separate counsel with respect to any action or claim brought or asserted against it, and the reasonable fees of such counsel shall be paid upon demand by the Transferors jointly and severally.  The obligations of Cronly and Oak-Bark under this Section shall survive any termination of this Agreement and the resignation or removal of Escrow Agent.

      5.3    <u>Compensation of Escrow Agent</u>.

      (i)    <u>Fees and Expenses</u>.  Cronly and Oak-Bark agree, jointly and severally, to compensate Escrow Agent upon demand for its services hereunder in accordance with <u>Schedule 1</u> attached hereto. The obligations of the Transferors under this Section shall survive any termination of this Agreement and the resignation or removal of Escrow Agent. Such compensation shall be payable from escrowed funds and chargeable against the Remediation Cap.

      (ii)    <u>Disbursements from Escrow Funds to Pay Escrow Agent</u>.  Escrow Agent is authorized to, and may disburse to itself from the Escrow Funds, from time to time, the amount of any compensation and reimbursement of expenses due and payable hereunder (including any amount to which Escrow Agent or any other Indemnified Party is entitled to seek indemnification hereunder).  Escrow Agent shall notify Cronly and Oak-Bark of any such disbursement from the Escrow Funds to itself or any other Indemnified Party and shall furnish Cronly and Oak-Bark copies of related invoices and other statements.

      (A)    <u>Security and Offset</u>.  The Transferors hereby grant to Escrow Agent and the other Indemnified Parties a first priority security interest in, lien upon and right of sale and offset against the Escrow Funds with respect to any compensation or reimbursement due any of them hereunder (including any claim for indemnification hereunder).

      (B)    The Escrow Agent shall provide Cronly and Oak-Bark with monthly statements showing income and disbursements, if any, of the Escrow Funds, and any pending payment claims and any other information with respect to the investments of the Escrow Fund as reasonably requested. At all times, Cronly or Oak-Bark, as applicable, shall be entitled to an unqualified accounting by the Escrow Agent for the Escrow Funds.

4871-0803-3022.v1

5.4     Removal. Escrow Agent may be removed by the Transferors at any time, for any reason, by written notice to Escrow Agent in accordance with Section 8, and upon such removal Escrow Agent shall promptly transfer all Escrow Funds to the successor escrow agent or the Transferors, as shall be set forth by the Transferors in the notice required under this Section.

## SECTION 6
## LIMITED RESPONSIBILITY

6.1     Limited Responsibility.  This Agreement expressly sets forth all the duties of Escrow Agent with respect to any and all matters pertinent hereto.  No implied duties or obligations shall be read into this agreement against Escrow Agent.  Escrow Agent shall not be bound by the provisions of any agreement between Cronly and Oak-Bark.

## SECTION 7
## OWNERSHIP & TAX REPORTING

7.1     Ownership.

(A)     The Transferors agree that for all purposes (i) Cronly shall be treated as the owner of the Cronly Property subject to the rights of Oak-Bark to the Escrow Funds pursuant to this Agreement, and that Cronly will report all income, if any, that is earned on, or derived from, the Cronly Property as its income in the taxable year or years in which such income is properly includible and pay any taxes attributable thereto, and (ii) Oak-Bark shall be treated as the owner of the Oak-Bark Property subject to the rights of Cronly to the Escrow Funds pursuant to this Agreement, and that Oak-Bark will report all income, if any, that is earned on, or derived from, the Oak-Bark Property as its income in the taxable year or years in which such income is properly includible and pay any taxes attributable thereto.  Except as otherwise directed by the Transferors in writing, Escrow Agent will report, on an accrual basis, all interest or income on (x) the Cronly Property as being owned by Cronly for federal income tax purposes, and (y) the Oak-Bark Property as being owned by Oak-Bark for federal income tax purposes. If any accrued interest income attributed to one Transferor is subsequently disbursed by Escrow Agent to the other, Cronly and Oak-Bark shall jointly direct Escrow Agent in writing with respect to the appropriate tax treatment and reporting of such disbursements.

(B)     Escrow Agent has no responsibility for the tax consequences of this Agreement and Cronly and Oak-Bark shall consult with independent counsel concerning any and all tax matters. Cronly and Oak-Bark jointly and severally agree to (i) assume all obligations imposed now or hereafter by any applicable tax law or regulation with respect to payments or performance under this Agreement and (ii) request and direct Escrow Agent in writing with respect to withholding and other taxes, assessments or other governmental charges, and advise Escrow Agent in writing with respect to any certifications and governmental reporting that may be required under any applicable laws or regulations. Except as otherwise agreed by Escrow Agent in writing, Escrow Agent has no tax reporting or withholding obligation except to the IRS with respect to Form 1099-B reporting on payments of gross proceeds under Internal Revenue Code Section 6045 and Form 1099 and Form 1042-S reporting with respect to investment income earned on the

4871-0803-3022.v1

Escrow Funds, if any.  Escrow Agent shall have no responsibility for Form 1099-MISC reporting with respect to disbursements that Escrow Agent makes in an administrative or ministerial function to vendors or other service providers and shall have no tax reporting or withholding duties with respect to the Foreign Investment in Real Property Tax Act (FIRPTA).

SECTION 8<br>NOTICES

8.1   Notices.  All notices, consents, waivers and other communications required or permitted under this Agreement shall be in writing and shall be deemed given to a party when (a) delivered to the appropriate address by hand or by a nationally recognized overnight courier service (costs prepaid); (b) sent by facsimile (with confirmation by the transmitting equipment); or (c) received by the addressee, if sent, by certified mail, return receipt requested, in each case to the following addresses and facsimile numbers and marked to the attention of the person (by name or title) designated below (or to such other address, facsimile number or person as a party may designate by notice to the other parties):

If to Cronly:

Cronly Bluffs LLC
514 Wayne Drive
Wilmington, NC 28403
Email: _____
Attn: _____

With a required copy to (which shall not constitute notice):

Brooks, Pierce, McLendon, Humphrey & Leonard, LLP
230 N. Elm Street, Suite 2000
Greensboro, North Carolina 27401
Email: cmorse@brookspierce.com
Attn: Clint Morse

If to Oak-Bark:

Oak-Bark Corporation
514 Wayne Drive
Wilmington, NC 28403
Email: _____
Attn: _____

With a required copy to (which shall not constitute notice):

The Law Offices of Oliver & Cheek, PLLC
PO Box 1548
New Bern, NC 28563-1548

4871-0803-3022.v1

        Email: george@olivercheek.com
        Attn: George M. Oliver

<u>If to Escrow Agent</u>:

[_____]
[Address]
[City, State, Zip]
Email: _____
Attn: _____

Escrow Agent shall not have any duty to confirm that the person sending any notice, instruction or other communication (each, a "**Notice**") by electronic transmission (including by e-mail, facsimile transmission, web portal or other electronic methods) is, in fact, a person authorized to do so. Electronic signatures believed by Escrow Agent to comply with the ESIGN Act of 2000 or other applicable law (including electronic images of handwritten signatures and digital signatures provided by DocuSign, Orbit, Adobe Sign or any other digital signature provider acceptable to Escrow Agent) shall be deemed original signatures for all purposes. Each other party assumes all risks arising out of the use of electronic signatures and electronic methods to send Notices to Escrow Agent, including without limitation the risk of Escrow Agent acting on an unauthorized Notice, and the risk of interception or misuse by third parties.

SECTION 9
DISPUTE RESOLUTION; JURISDICTION; SERVICE OF PROCESS

      9.1    This Section 9 pertains only to Cronly and Oak-Bark and Escrow Agent shall not receive nor act upon any notice of dispute.

      9.2    Any dispute arising out of this Agreement shall remain within the exclusive jurisdiction of the United States Bankruptcy Court for the Eastern District of North Carolina.

SECTION 10
MISCELLANEOUS

      10.1    <u>Section Headings, Construction</u>.  The headings of sections in this Agreement are provided for convenience only and will not affect its construction or interpretation.

      10.2    <u>Waiver</u>.  The rights and remedies of the parties to this Agreement are cumulative and not alternative.  Neither the failure nor any delay by any party in exercising any right, power or privilege under this Agreement or the documents referred to in this Agreement will operate as a waiver of such right, power or privilege, and no single or partial exercise of any such right, power or privilege will preclude any other or further exercise of such right, power or privilege or the exercise of any other right, power or privilege.  To the maximum extent permitted by applicable law (a) no claim or right arising out of this Agreement or the documents referred to in this Agreement can be discharged by one party, in whole or in part, by a waiver or renunciation of the claim or right unless in writing signed by the other party; (b) no waiver that may be given by a party will be applicable except in the specific instance for which it is given; and (c) no notice to or

demand on one party will be deemed to be a waiver of any obligation of such party or of the right of the party giving such notice or demand to take further action without notice or demand as provided in this Agreement or the documents referred to in this Agreement.

10.3    Entire Agreement and Modification.  This Agreement constitutes the entire agreement between the signatory parties hereto relating to the holding, investment and disbursement of Escrow Funds and sets forth in their entirety the obligations and duties of Escrow Agent with respect to Escrow Funds. None of the terms or conditions of this Agreement may be changed, waived, modified, terminated or varied in any manner whatsoever unless in writing duly signed by each party to this Agreement.  No course of conduct will constitute a waiver of any of the terms and conditions of this Agreement, unless such waiver is specified in writing, and then only to the extent so specified.  No party may assign this Agreement or any of its rights or obligations hereunder without the written consent of the other parties, provided that if Escrow Agent consolidates, merges or converts into, or transfers all or substantially all of its corporate trust business (including the escrow contemplated by this Agreement) to another entity, the successor or transferee entity without any further act will be the successor Escrow Agent.

10.4    Governing Law.  This Agreement shall be governed by the laws of the State of North Carolina without regard to conflicts of law principles that would require the application of any other Law.

10.5    Counterparts.  This Agreement may be executed in one or more counterparts, all of which shall be considered one and the same agreement, and shall become effective when one or more counterparts have been signed by each of the parties and delivered to the other parties.  A facsimile signature shall constitute an original Agreement.

*[Remainder of page is blank.  Signature page follows.]*

4871-0803-3022.v1

IN WITNESS WHEREOF, the parties have executed and delivered this Environmental Remediation and Escrow Agreement as of the date first written above.

**TRANSFERORS:**

CRONLY BLUFFS LLC

By:_____
Name: _____
Title: _____

OAK-BARK CORPORATION

By:_____
Name: _____
Title: _____

**ESCROW AGENT:**

[_____]

By:_____
Name: _____
Title: _____

## **EXHIBIT A**

## **THE PROPERTY**

4871-0803-3022.v1

# SCHEDULE 1

## **ESCROW AGENT FEE SCHEDULE**

(see attached)

4871-0803-3022.v1

## SCHEDULE 2

## <u>REPRESENTATIVES</u>

Each of the following person(s) is a **Cronly Representative** authorized to execute documents and direct Escrow Agent as to all matters, including fund transfers, address changes and contact information changes, on Cronly's behalf (only one representative required):

| | | |
|---|---|---|
| Name | Specimen signature | Telephone No. |
| Name | Specimen signature | Telephone No. |
| Name | Specimen signature | Telephone No. |

If only one person is identified above, the following person is authorized for call-back confirmations:

_____                     _____
Name                                                                Telephone Number

Each of the following person(s) is an **Oak-Bark Representative** authorized to execute documents and direct Escrow Agent as to all matters, including fund transfers, address changes and contact information changes, on Oak-Bark's behalf (only one representative required):

| | | |
|---|---|---|
| Name | Specimen signature | Telephone No. |
| Name | Specimen signature | Telephone No. |
| Name | Specimen signature | Telephone No. |

If only one person is identified above, the following person is authorized for call-back confirmations:

_____                     _____
Name                                                                Telephone Number

4871-0803-3022.v1

## SCHEDULE 3

## **FORM OF JOINT WRITTEN DIRECTION**

[To be completed upon submission]

[Escrow Agent]
ATTN: _____
Address: _____

RE: **ENVIRONMENTAL REMEDIATION AND ESCROW AGREEMENT** made and entered into as of [_____], 2024 by and among Cronly Bluffs LLC, a North Carolina limited liability company ("**Cronly**"), Oak-Bark Corporation, a North Carolina corporation ("**Oak-Bark**" and together with Cronly, the "**Transferors**"), and [_____], as escrow agent hereunder ("**Escrow Agent**").

Pursuant to Section 4.1(C) of the above-referenced Environmental Remediation and Escrow Agreement, Cronly and Oak-Bark hereby instruct Escrow Agent to disburse the amount of [$_____] from the Escrow Fund to [Cronly/Oak-Bark], as provided below:

[_____]

Bank Name: _____
Bank Address: _____
ABA No.:       _____
Account Name: _____
Account No.:   _____

**CRONLY BLUFFS LLC**

By:_____
Name: _____
Date: _____

**OAK-BARK CORPORATION**

By:_____
Name: _____
Date: _____